**In re the Marriage of Angela M. SEGER, Appellant–Respondent,**

**v.**

**Rusty P. SEGER a/k/a Russell Paul Seger, Appellee–Petitioner.**

No. 87A01–0208–CV–314.

Court of Appeals of Indiana.

Dec. 31, 2002.

S. Anthony Long, Boonville, IN, Attorney for Appellant.

**OPINION**

BAKER, Judge.

Appellant-respondent Angela M. Seger appeals the trial court's judgment entered in favor of appellee-petitioner Rusty P. Seger that determined no children had been born to their marriage. Specifically, Angela alleges that the trial court's judgment is clearly erroneous because the parties executed a paternity affidavit where Rusty acknowledged that he was the father of Angela's minor son, C.S., even though it was undisputed that he was not the child's biological father. Concluding that the trial court properly determined that the paternity affidavit must be rescinded, we affirm.

*FACTS*

The facts most favorable to the judgment are that Angela and Rusty were married in April 1996 and lived together until September 11, 2001. Prior to the marriage, Angela gave birth to her son, C.S., and a daughter who were born out of wedlock. C.S. was born on July 19, 1989, and it was not disputed that Angela had once been married to C.S.'s biological father. In other words, Rusty was not the father of either child and Angela never advised him that he was. However, on February 30, 1998(sic), approximately two years after the parties had been married, Rusty and Angela went to the local health department where they signed a paternity affidavit that they obtained from the Indiana Department of Health. In that petition, Rusty indicated that he was accepting paternity of C.S.

Thereafter, on September 11, 2001, Rusty filed a petition for dissolution, wherein he stated that no children were born of the marriage. Following a hearing on June 27, 2002, the trial court entered an order finding, among other things, that the paternity affidavit was executed in a fraudulent manner because both Angela and Rusty knew that Rusty was not C.S.'s biological father. Thus, the trial court ordered the paternity affidavit rescinded and determined that there were no children born of the marriage. Rusty, therefore, was relieved of any rights to or responsibilities regarding C.S. Angela now appeals.

*DISCUSSION AND DECISION*

Angela argues that the judgment was erroneous because she and Rusty believed that "signing the Paternity Affidavit made the Husband the minor child's legal father." Appellant's Br. p. 5. Thus, Angela asserts that Rusty voluntarily and knowingly accepted all the rewards and responsibilities relating to C.S. and, therefore, the paternity affidavit is valid. We note at the outset that Rusty has not favored this court with an appellee's brief. In such a situation, we do not undertake the burden of developing arguments for the appellee. Applying a less stringent standard of review with respect to showings of reversible error, we may reverse the lower court if the appellant can establish prima facie error. *Hill v. Ramey*, 744 N.E.2d 509, 511 (Ind.Ct.App.2001). Prima facie, in this context, is defined as "at first sight, on first appearance, or on the face of it." *Id.* (quoting *Johnson County Rural Elec. Membership Corp. v. Burnell*, 484 N.E.2d 989, 991 (Ind.Ct.App.1985)). Where an appellant is unable to meet that burden, however, we will affirm. *Id.*

In addressing the merits of this case, we have recognized that while the execution of a paternity affidavit creates a legal presumption that the man is the child's biological father, *see* Indiana Code section 31–14–7–1(3), both parties agree that Rusty is not C.S.'s biological father. In examining the effect of Ind.Code section 16–37–2–2.1, our paternity affidavit statute, a procedure is prescribed whereby a mother and a man who "reasonably appears to be the child's biological father" are provided an opportunity to execute an affidavit shortly after the birth of a child born out of wedlock that acknowledges the man's paternity of the child. *Id.* Here, neither Rusty nor Angela held any "reasonable belief" that he appeared to be C.S.'s biological father. To the contrary, as set forth in the Facts, it was undisputed that Angela knew the identity of C.S.'s biological father and had been previously married to him. Thus, Angela's contention that she may take advantage of the provisions of the paternity affidavit statute, Indiana Code section 16–37–2–2.1 in this instance, must fail.

■■ It is apparent that Angela is urging that the execution of the paternity affidavit in this instance is tantamount to Rusty's adoption of C.S. Thus, claims Angela, Rusty should have all the rights and responsibilities over C.S. that an adoptive father would have. However, we note that there is no equitable adoption in this state. *Lindsey v. Wilcox*, 479 N.E.2d 1330, 1333 (Ind.Ct.App.1985), *trans. denied.* Specifically, the adoption of a minor child requires, among other things, that a petition for adoption be filed by an attorney of record with the clerk of the court having probate jurisdiction. Ind.Code § 31–19–2–2. The record does not show that C.S.'s biological father ever consented to an adoption as required by Indiana Code section 31–19–9–1, and it was not demonstrated that notice was given to any purported unnamed putative father as set forth in Indiana Code section 31–19–4–4. Thus, the parties have failed to follow the requirements governing the adoption of a minor child. As a result, the trial court correctly set aside the paternity affidavit.

Judgment affirmed.

RILEY and MATHIAS, JJ., concur.