**Dallis J. TIREY, Appellant–Respondent,**

v.

**Marla L. TIREY, Appellee–Petitioner,**

**State of Indiana, Intervener–Appellee.**

**No. 66A03–0310–CV–410.**

Court of Appeals of Indiana.

April 20, 2004.

---

Kevin C. Tankersley, Winamac, IN, Attorney for Appellant.

Steve Carter, Attorney General of Indiana, Justin F. Roebel, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

## OPINION

FRIEDLANDER, Judge.

Dallis and Marla Tirey divorced in 1994. Their dissolution decree addressed child support with respect to two children: then eight-year-old R.T., who was the Tireys' biological child, and then three-year-old A.L., who was the biological daughter of Marla's brother, Neal Lloyd. A.L. had lived with the Tireys since she was five days old, as will be explained more fully below. The court awarded custody[1] of both children to Marla, and Dallis was ordered to pay child support for both children. Dallis filed a motion to terminate his obligation as to A.L., and the trial court denied the motion. Dallis appeals that ruling, presenting the following restated issues for review:

1. May a court impose a child support order upon a man who volunteered to pay support but is neither the biological father nor the adoptive parent of the child?

2. Did the trial court err in denying Dallis's request to modify his child

---

1. For reasons that will become obvious to the reader, the term "custody", as it relates to A.L., is used advisedly. It appears that in a de facto sense, Marla stands in loco parentis to A.L. The legal classification of that relationship, if indeed there is one, is problematic, to say the least. It is not inconceivable that the implications of that classification could send ripples throughout the rest of this case. The parties did not present that question, however, so we will not address it.

support obligation with respect to A.L.?

We affirm.

The facts favorable to the ruling are that in 1991, Victoria Shorter gave birth to a daughter, A.L. Sometime thereafter, a paternity proceeding was initiated and Lloyd was determined to be A.L.'s biological father. Lloyd was in prison at the time of A.L.'s birth. While Shorter was pregnant with A.L., she had indicated to Marla that if the child turned out to be a girl, she was not interested in raising the child. When A.L. was born, Marla and Dallis assumed custody of the child almost immediately. The record does not illuminate the details, but Dallis and Marla apparently took A.L. home in February of 1991, when A.L. was five days old. On September 13, 1991, Shorter executed an Agreement of Custody that stated, in relevant part, "I ... do hereby consent to and request that Marla and Dallis Tirey ... have full custody and control over the above named child." *Appellant's Appendix* at 49. It appears that the parties did not initiate legal proceedings to establish formal guardianship or legal custody of A.L. In fact, the only legal proceeding that has, to date, addressed the issue of custody of A.L. was the dissolution action between Dallis and Marla. The documentary evidence on that point is found exclusively in the "Custody and Visitation" paragraph of the dissolution decree, which provided as follows:

The Wife is not now pregnant and the following minor child was born of the marriage, to-wit: [R.T.], born November 2, 1985. In addition, the parties have assumed custody of another minor child, to-wit: [A.L.], born February 28, 1991, as is more clearly shown by a copy of the custody agreement which was entered into by the parties and which is attached hereto and made a part hereof.

The Wife shall have custody of the minor children, and the Husband shall have visitation with said children at all reasonable times and places.... In addition, the Husband shall have the right to have access to the children's school records....

*Id.* at 45. Marla testified on the subject of how Dallis's child support obligation arose in the first place:

When we divorced, I had a feeling that I didn't feel like [Dallis] should have been obligated to [A.L.] because it wasn't his biological child, and so I only asked for child support for [R.T.]. And he fought me on it, and he said that he was her dad, he raised her, and he wanted to continue to have part of her life. He wanted to pay child support and he wanted to have visitation.

*Transcript* at 20. The court set Dallis's child support obligation at $164.00 per week.

With respect to visitation privileges and his child support obligation, Dallis abided by the terms of the dissolution decree until 2000. In that year, Dallis was the subject of an unrelated criminal prosecution. In an attempt to avoid that proceeding, Dallis moved to Kentucky. After he did so, he stopped paying child support. On August 29, 2002, a bench warrant was issued in Indiana against Dallis for failure to pay child support. By that time, he had accumulated a child support arrearage of $13,275. On January 28, 2003, Dallis filed a Verified Petition for Modification of Child Support in which he asked "[t]hat the child support arrearage should be recalculated to exclude any obligation for [A.L.] since any child support order for said child would be illegal." *Appellant's Appendix* at 50. The "illegality" to which the modification motion alluded was the fact that Dallis was not A.L.'s biological

parent, nor was he her legal guardian or custodian.

### 1.

 We review the denial of a petition to modify child support under the clearly erroneous standard. *Scoleri v. Scoleri,* 766 N.E.2d 1211 (Ind.Ct.App. 2002). The trial court's decision will be reversed only where it is clearly against the logic and effect of the facts and circumstances before the trial court. *Id.* We do not reweigh evidence or judge witness credibility. Rather, we consider only the evidence most favorable to the judgment, together with the reasonable inferences that can be drawn from that evidence. *Id.* The person seeking modification bears the burden of proving a substantial change in circumstances justifying modification. *Id.*

 Dallis frames the issue before us as follows: "Is an agreement to pay child support, set forth in a divorce decree enforceable when the parties are not the parents of the child and there has been no adoption of [sic] guardianship over the child[?]" *Appellant's Brief* at 9. In support of his contention that it is not, Dallis offers an argument focused primarily upon public policy considerations. According to Dallis, at stake is the strong public policy of enforcing a natural parent's obligation to support his or her child. Dallis claims that if our courts force him to abide by the terms of his agreement, then we are, in effect, "condon[ing] what amounts to criminal conduct on the part of the biological parents[.]" *Id.* at 14. We assume that the "criminal conduct" to which he alludes is the failure of A.L.'s biological parents to provide for her. Moreover, quoting *Fairrow v. Fairrow,* 559 N.E.2d 597, 600 (Ind. 1990), Dallis notes that our courts have established that "[t]here is a substantial public policy, namely justice, which disfavors a support order against a husband who is not the child's father." Taking all of this together, Dallis contends that his agreement to pay support for A.L. should be voided because (1) it contravened the established public policy of having a child's biological parents (in this case, Lloyd and Shorter) assume the financial responsibility of raising a child, and (2) our sense of justice counsels against ordering someone to pay support for a child that is not their biological child or legal ward. We find neither argument persuasive on the facts of this case.

Dallis correctly notes that there is a strong public policy in favor of parents supporting their biological children and that sound public policy, as well as an innate sense of justice, also counsels against imposing that burden on someone who is not a biological parent of the child. The principal case on this point cited in Dallis's brief, *Fairrow v. Fairrow,* 559 N.E.2d 597, provides authority for those uncontroversial propositions. That case does not, however, supply a theoretical framework for applying those principles to the facts of this case. In *Fairrow,* a husband and wife divorced. The wife had a child during the marriage. Assuming the child was his, the husband did not challenge the portion of the dissolution decree ordering him to pay child support. Some years later, while he was still making support payments, the husband was inadvertently apprised of medical information that led to the discovery that the child was not his. He instituted proceedings to dismiss the child support order. Our supreme court reversed the denial of his petition for relief from the child support order. The court determined that, in certain cases, a man believed to be a child's father may challenge a support order entered on the basis of that alleged paternity, so long as the challenge is mounted based upon externally obtained,[2] clear medical proof that the child was not his. *Id.*

**2.** In this case, "externally obtained" means that the evidence establishing non-paternity

Dallis knew he was not A.L.'s biological father, as did the court when it entered the child support order. Therefore, the child support obligation was not imposed on the ground that Dallis was A.L.'s biological father. Rather, it was entered because Dallis insisted upon it. Thus, *Fairrow* is inapposite. In fact, Dallis does not address the critical fact that we consider to be dispositive of this appeal, i.e., that he *volunteered* to subject himself to a court-ordered support obligation. Thus, Dallis's argument suffers the infirmity of being unmoored from the critical fact of this case.

Ind.Code Ann. § 31–15–2–17 (West 1998) provides that parties in a dissolution proceeding may enter into agreements to settle terms related to maintenance, property division, and child support. With respect to child support, the freedom to agree on terms is limited only by the child's best interests. *See Dillon v. Dillon,* 696 N.E.2d 85 (Ind.Ct.App.1998), *trans. denied.* Thus, for example, neither party has the right to contract away a child's support benefits. *See Schrock v. Gonser,* 658 N.E.2d 615 (Ind.Ct.App.1995). This case, on the other hand, involves a valid agreement between the parties establishing what might be described as gratuitous child support. We are persuaded that in such circumstances, the rules of contracts come into play in a way that is not the case with respect to court-imposed support. In this situation, we are guided not only by the relevant statutory guidelines, but also by contract principles. When parties enter into a valid agreement with adequate consideration, the terms of the agreement are mutually and permanently binding on the parties if the court approves the agreement. This principle applies with respect to child support obli-

gations in a dissolution action. *See Carson v. Carson,* 120 Ind.App. 1, 89 N.E.2d 555 (1950). Moreover, the court can include in its support order an obligation that the obligated party voluntarily agreed to, but that the court would not have had authority to impose in the first place without such agreement. *See Schueneman v. Schueneman,* 591 N.E.2d 603 (Ind.Ct.App.1992).

In *Schueneman,* the father agreed at a hearing that he would pay all of his children's uninsured medical expenses until they were out of college, and the court entered an order to that effect. Thereafter, the father sought to modify the order and terminate the obligation to pay medical expenses for his children who were past the age of twenty-one. He correctly noted that, pursuant to the statute then in effect, the trial court did not have statutory authority to order him to pay medical expenses for children over the age of twenty-one. This court rejected that argument, stating, "Clearly [the father] agreed to pay the children's past and future medical expenses ... and the court's order reflected [the father's] agreement. Therefore, error, if any, was invited by [the father] and he must now abide by the court's order." *Id.* at 611. Significantly, the court went on to state, "the parties are free to agree to the custody and support of their children, ... *even though the trial court may not have the authority to order the parties to do as they agree.*" *Id.* (emphasis supplied).

The only distinction between *Schueneman* and the instant case is that A.L. is not "their" (meaning the Tireys) child. That distinction might make a difference if we were guided by only I.C. § 31–16–6–1(a), which authorizes ordering "parents" to pay child support. We must read this statute, however, in harmony with the

---

was not actively sought by the putative father, but was discovered almost inadvertently in a

manner that was unrelated to child support proceedings.

holdings in *Carson* and, especially, *Schueneman.* In the instant context, that means a trial court has jurisdiction to fashion child support orders (pursuant to I.C. § 31–16–6–1(a)), and the court has the authority to enter a child support order in a dissolution proceeding against a non-parent (pursuant to the rationale in *Carson* and *Schueneman* ) so long as the obligated party agreed to that term and the agreement was not the product of artifice or mistake. That is especially so where, as here, the obligated party *requested* that the obligation be imposed in exchange for consideration (in this case, visitation). The trial court had the authority to order Dallis to continue paying support for A.L.

### 2.

Dallis contends that the trial court erred in denying his motion to modify the original child support order. Dallis offers no argument independent of the one we rejected in Issue 1 above in support of his contention that his child support obligation should be terminated with respect to A.L. Thus, Dallis has failed to carry his burden of proving that there has been a substantial change in circumstances justifying the modification of support that he seeks. The trial court did not err in denying his motion.

Judgment affirmed.

KIRSCH, C.J., and BARNES, J., concur.