**Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.**



FILED

May 24 2012, 9:37 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEY FOR APPELLANT:

**JERRY T. DROOK**
Marion, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE PATERNITY OF B.C. [1]: | ) | |
| | ) | |
| M.L., | ) | |
| | ) | |
| Appellant-Intervenor, | ) | |
| | ) | |
| vs. | ) | No. 05A02-1110-JP-964 |
| | ) | |
| D.N., Jr., | ) | |
| | ) | |
| Appellee-Intervenor. | ) | |

APPEAL FROM THE BLACKFORD CIRCUIT COURT
The Honorable Dean A. Young, Judge
Cause No. 05C01-0902-JP-17

**May 24, 2012**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

---

[1] The trial court caption lists D.C. and N.E., n/k/a N.C., as Petitioner and Respondent, respectively. D.C. and N.C. have not actively participated in this appeal. However, pursuant to Indiana Appellate Rule 17, a party of record below is a party on a appeal.

**BRADFORD, Judge**

B.C. was born to N.E. on January 26, 2009, out of wedlock. D.C. and N.E. executed a paternity affidavit establishing that D.C. is B.C.'s natural father. On May 26, 2009, the trial court reviewed the paternity affidavit and issued an order stating that D.C. is B.C.'s natural father. D.N., Jr., subsequently intervened, requested the trial court to set aside its May 26, 2009 order, and claimed to be B.C.'s biological father. On September 15, 2011, the trial court set aside the paternity affidavit executed by D.C. and N.E. and the May 26, 2009 paternity order. Appellant-Intervenor M.L. appeals the September 15, 2011 order. Concluding that the trial court erred in setting aside the paternity affidavit executed by D.C. and N.E. and the May 26, 2009 paternity order, we reverse the judgment of the trial court.

## FACTS AND PROCEDURAL HISTORY

B.C. was born to N.E. on January 16, 2009. N.E. had engaged in sexual intercourse with both D.C. and D.N., Jr., at or near the time that B.C. was conceived. N.E. believed that there was a possibility that either D.C. or D.N., Jr., could be B.C.'s biological father. Both D.C. and D.N., Jr., were aware of B.C.'s birth and the possibility that they could be B.C.'s father.

On February 13, 2009, D.C. filed a petition seeking to establish paternity. That same day, the trial court ordered the parties to undergo DNA testing to establish paternity. On February 26, 2009, before the results of the DNA testing were filed with the trial court or made known to the parties, D.C. and N.E. executed a paternity affidavit establishing that D.C. is B.C.'s natural father. The results of the DNA test, which indicated that D.C. is not

2

B.C.'s biological father, were submitted to the trial court and made known to D.C. and N.E. on March 2, 2009.

Despite being made aware of the results of the DNA tests, D.C. and N.E. requested that the trial court not consider the results of the DNA tests and waived the introduction of the DNA test results into evidence at the May 26, 2009 hearing to establish paternity.[2] The trial court granted D.C. and N.E.'s request and did not consider the DNA test results at the May 26, 2009 hearing. Finding that D.C. and N.E. had executed a paternity affidavit conclusively establishing that D.C. is the natural father of B.C., the trial court "ORDERED, ADJUDGED AND DECREED" that D.C. is the natural father of B.C. Appellant's App. p. 26. D.C. and N.E. subsequently married.

On September 29, 2010, D.C.'s mother, M.L. filed a motion to intervene and requested emergency custody of B.C. In her motion, M.L. asserted that at the time, neither D.C. nor N.E. was capable of caring for B.C. The trial court granted M.L.'s motion to intervene on October 12, 2010, and awarded M.L. emergency custody of B.C.

On February 17, 2011, D.N., Jr., filed a motion to intervene, seeking to set aside the May 26, 2009 paternity order and to establish paternity.[3] In this motion, D.N., Jr., asserted

---

[2] The record on appeal does not include a transcript of this hearing. However, the trial court's order specifically states that D.C. and N.E. were made aware of the test results, were fully advised of their right to have the court consider the test results, and nonetheless requested that the results not be admitted or considered by the court. (Appellant's App. 26) Neither D.C. nor N.E. has challenged this finding of the trial court.

[3] The trial court's order setting aside the May 26, 2009 paternity order states that D.N., Jr., filed a petition to establish paternity under Cause Number 05C01-1011-JP-64 on November 8, 2010, and that said petition was subsequently dismissed on November 30, 2010. (Appellant's App. 64) We are unable to verify the accuracy of this statement, however, because the record does not contain any other mention of this petition or its dismissal.

that he is B.C.'s biological father. The trial court granted D.N., Jr.,'s petition to intervene and scheduled a hearing on his request that the court set aside the May 26, 2009 paternity order. During this hearing, which was held on May 26, 2011, D.N., Jr., admitted that he believed that he was B.C.'s biological father in February of 2009, but did not take any action to establish paternity at that time. On September 15, 2011, the trial court set aside the paternity affidavit executed by D.C. and N.E. on February 26, 2009, as well as the May 26, 2009 paternity order. The trial court further ordered that custody of B.C. should remain with M.L. and that D.N., Jr., could file further petitions related to the establishment of paternity. M.L. now appeals.

## DISCUSSION AND DECISION

We note at the outset that D.N., Jr., has not favored this court with an appellee's brief. In such a situation, we do not undertake the burden of developing arguments for the appellee. *Seger v. Seger*, 780 N.E.2d 855, 857 (Ind. Ct. App. 2002).

> Applying a less stringent standard of review with respect to showings of reversible error, we may reverse the lower court if the appellant can establish prima facie error. *Hill v. Ramey*, 744 N.E.2d 509, 511 (Ind. Ct. App. 2001). Prima facie, in this context, is defined as "at first sight, on first appearance, or on the face of it." *Id*. (quoting *Johnson County Rural Elec. Membership Corp. v. Burnell*, 484 N.E.2d 989, 991 (Ind. Ct. App. 1985)). Where an appellant is unable to meet that burden, however, we will affirm. *Id*.

*Id*.

M.L. contends that the trial court erred in setting aside the paternity affidavit executed by D.C. and N.E., which M.L. argues conclusively established paternity in favor of D.C. Indiana Code section 31-14-1-1 provides that "[t]he general assembly favors the public

policy of establishing paternity … of a child born out of wedlock."  Indiana's paternity

statutes were created to avoid a situation where a child would be considered a "filius nullius"

or "son of nobody" which would carry with it countless detrimental emotional and financial

effects.  *In re Paternity of E.M.L.G.*, 863 N.E.2d 867, 870 (Ind. Ct. App. 2007).

Indiana Code section 31-14-2-1 provides that a man's paternity may only be

established through an action filed under Indiana Code Title 31, Article 14 or by executing a

paternity affidavit in accordance with Indiana Code section 16-37-2-2.1.  "A man is a child's

legal father if the man executed a paternity affidavit in accordance with [Indiana Code

section] 16-37-2-2.1 and the paternity affidavit has not been rescinded or set aside under

[Indiana Code section] 16-37-2-2.1." Ind. Code § 31-14-7-3.  Indiana Code section 16-37-2-

2.1 provides the exclusive means by which a paternity affidavit that was properly executed in

accordance with Indiana Code section 16-37-2-2.1 can be rescinded or set aside.

Specifically, Indiana Code section 16-37-2-2.1 provides that a properly executed paternity

affidavit can be rescinded or set aside in the following situations:

> (i) Notwithstanding any other law, a man *who is a party to a paternity affidavit executed under this section* may, within sixty (60) days of the date that a paternity affidavit is executed under this section, file an action in a court with jurisdiction over paternity to request an order for a genetic test.
> (j) A paternity affidavit that is properly executed under this section may not be rescinded more than sixty (60) days after the paternity affidavit is executed unless a court:
>> (1) has determined that fraud, duress, or material mistake of fact existed in the execution of the paternity affidavit; and
>> (2) *at the request of a man described in subsection (i)*, has ordered a genetic test, and the test indicates that the man is excluded as the father of the child.
> ****
> (l) The court *may not* set aside the paternity affidavit unless a genetic test

5

*ordered under subsection (i) or (j)* excludes the person who executed the paternity affidavit as the child's biological father.[4]

(Emphases Added).

Here, D.C., the man who is a party to and signed the paternity affidavit in question, has not requested that the trial court rescind or set aside his paternity affidavit. D.C. has not filed a request for a genetic test under Indiana Code section 16-37-2-2.1, subsection (i) or (j), and the trial court has issued no such order. In fact, D.C. has expressly requested that the court not consider the results from the DNA test that was ordered before he signed the paternity affidavit. As no genetic test that excluded D.C. as B.C.'s biological father was requested by D.C. after the execution of the paternity affidavit pursuant to Indiana Code section 16-37-2-2.1, subsection (i) or (j), the trial court could not set aside the paternity affidavit. *See* Ind. Code § 16-37-2-2.1(l). Accordingly, we conclude that, pursuant to the clear language set forth in Indiana Code section 16-37-2-2.1, subsections (i), (j), and (l), the trial court erred in setting aside the paternity affidavit executed by D.C. and N.E. on February 26, 2009.

Furthermore, we observe that Indiana Code section 16-37-2-2.1 appears to only allow the male that actually signed the paternity affidavit to challenge its validity. It does not appear to provide an avenue by which an individual other than the man who signed the paternity affidavit can successfully challenge a properly executed paternity affidavit and have

---

[4] We note that the General Assembly recently amended Indiana Code section 16-37-2-2.1. *See* 2012 Ind. Legis. Serv. P.L. 128-2012. These amendments will take effect on July 1, 2012. However, we further note that the there are no amendments of substance to the portions of Indiana Code section 16-37-2-2.1 that are relevant to the disposition of the instant appeal.

6

it rescinded or set aside. In addition, the trial court explicitly found that neither D.C. nor N.E. committed fraud in executing the paternity affidavit as, at the time it was executed, each believed that D.C. was or reasonably could be B.C.'s biological father. D.N., Jr., was aware in late February or early March of 2009 that D.C. was listed as B.C.'s father on B.C.'s birth certificate, but also believed that he could potentially be B.C.'s biological father. D.N., Jr., however, sat on his rights and did not attempt to establish paternity until well after D.C. and N.E. had executed the paternity affidavit and established D.C. as B.C.'s natural father.

Again, D.N., Jr., has failed to file an appellee's brief providing any argument or pointing to any relevant authority refuting the plain language of Indiana Code section 16-37-2-2.1 or asserting that he can successfully request the trial court to rescind or set aside the paternity affidavit signed by D.C. and N.E., and we will not undertake the burden of developing arguments for D.N., Jr., on appeal. *See Seger*, 780 N.E.2d at 857. We conclude that M.L. has met the less stringent standard of proving prima facie error as she has demonstrated that the trial court erroneously set aside the paternity affidavit that was executed by D.C. and N.E. in accordance with Indiana Code section 16-37-2-2.1. The properly executed paternity affidavit conclusively established that D.C. is B.C.'s natural father. *See* Ind. Code § 31-14-7-3. D.C. has not requested that the paternity affidavit be rescinded or set aside. Therefore, because we conclude that the trial court erroneously set aside the paternity affidavit executed by D.C. and N.E., we further conclude that the trial court erred in setting aside the May 26, 2009 paternity order.[5]

_____

[5] Having concluded that the trial court erroneously set aside the paternity affidavit executed by D.C. and N.E. and the May 26, 2009 paternity order, we need not consider M.L.'s remaining challenges to the trial

7

While we believe that the trial court erred in setting aside the May 26, 2009 paternity order, we are troubled by the practice of accepting a paternity affidavit once DNA test results exclude the individual named in the affidavit as the biological parent. The proper procedure would have been for the trial court to require D.C. and N.E. to file a petition for adoption pursuant to Indiana Code section 31-19-2-2, which would have provided notice to all putative fathers, including D.N., Jr. *See* Indiana Code sections 31-19-4-1 through 31-19-4-3.

The judgment of the trial court is reversed.

ROBB, C.J., and BAILEY, J., concur.

court's September 15, 2011 order.