NAJAM, Judge,
dissenting.
[26] I respectfully dissent. The majority opinion that “Husband is equitably es-topped” from claiming that G.B.S. is not a child of the marriage is contrary to law.. See Op. at 1081. The Dissolution of Marriage Act as well as precedent of the Indiana Supreme Court and this court have established that a child support order in a dissolution of marriage can be entered only for a child of both parties to the marriage. Indiana does not recognize equitable estoppel, adoption by estoppel, or in loco parentis as grounds for a child support order. That is, there is no equitable paternity in Indiana. The dissolution court erred when it ordered Husband to pay child support for a child who is neither his biological child nor his adopted child and who is, therefore, not a child of both parties to the marriage.[10]

Under the Dissolution of Marriage Act a “Child of Both Parties to the Marriage” is a Term of Art that Refers only to Natural and Adoptive Parents

[27] The Dissolution of Marriage Act plainly states that the term “child” means “a child or children of both parties to the marriage.” Ind.Code § 31-9-2-13 (2015). Thus, the meaning of “child” under the Act is unambiguous and, as our supreme court has said, -Indiana’s dissolution -law governs only “children of both parties to the marriage.” Snow v. England (In re Snow), 862 N.E.2d 664, 668 (Ind.2007) (citing I.C. § 31-9-2-13). The term “children of both parties to the marriage” is “a term of art that refers-only to natural and adoptive parents.” Id. That is, “child” refers to “children born or adopted during the marriage—as long as both parties are the. natural parents (or adopted the child).” Russell v. Russell, 682 N.E.2d 513, 516-17 (Ind.1997) (agreeing with, among other cases, R.D.S. v. S.L.S., 402 N.E.2d 30 (Ind.Ct.App.1980)). This was also true under Indiana’s divorce statutes prior to the Dissolution of Marriage Act. See Pilgrim v. Pilgrim, 118 Ind.App. 6, 13, 75 N.E.2d 159, 162 (1947) (“[a]n order for [the] custody and support” of a child not bom of the marriage “would have been improper. The statute ... refers only to the children of the marriage.”) (discussing Burns’ Ind. Statutes Ann. § 3-1219 (1933)). ■
[28] In Russell, our supreme court explained that the requirement that a' child be a child of both parties to the marriage is grounded in public policy. 682 N.E.2d at 517 n. 7. Namely, the proper identification of parents and child is the predicate for both parental rights and parental obligations, including “the just determination of child support.” ' Id. The court concluded that public policy disfavors a support order against a man who is not the child’s father. Id. (citing In re S.R.I., 602 N.E.2d 1014, 1016 (Ind.1992)). As the court said in Pettit v. Pettit, “the obligation of a parent to provide support for a child ‘is founded in nature, not in contract.’” 626 N.E.2d 444, 445 (Ind.1993) (quoting Lower v. Wallick, 25 Ind. 68, 73 (1865) (emphasis in origi *1085 nal)). That is, a 'Child support obligation arises out of a natural duty, of the parent, which is grounded in the . unique, natural relationship of parent and child. Id. And when a man adopts a child in the manner provided by law, he assumes that duty.
[29] Here, there is no dispute that Husband is not the biological or adoptive father of G.B.S. To the contrary, the parties stipulated to the dissolution court that Husband was neither. And the parties’ stipulation was corroborated by 'letters Husband wrote to Wife-from prison that demonstrated that he was incarcerated at the time she became pregnant. See, e.g., Myers v. Myers, 13 N.E.3d 478, 482 (Ind.Ct.App.2014) (noting that a husband may rebut the presumption of his paternity where the evidence shows that he “was absent so as to have no access to the mother” during conception). The evidence clearly and convincingly demonstrates that G.B.S. is not a child of both parties to the marriage. See id. The dissolution court correctly found as much, and the majority does not question the court’s finding.
[30] Nonetheless, after finding ' that G.B.S. is not a child of both parties to the marriage, the dissolution court ordered Husband to pay support for G.B.S. That order exceeds the dissolution court’s statutory authority. See I.C. § 31-9-2-13. As our supreme court held in State ex rel. Hight v. Marion Superior Court, “the trial court order regarding child support and visitation, based on [husband’s] acknowledgment of the child who he did not father, would have been subject to' attack as exceeding the authority granted by the statutes.” 547 N.E.2d 267, 269 (Ind.1989) (emphasis added).
[31] Under the Dissolution of Marriage Act paternity and support are indivisible. Paternity is a condition precedent to .child support under the Act and-must be satisfied' before a child- support order may be entered.-.-A support order in a dissolution action against a man who is not the father of the child violates the Act and the .policies underlying the Act. Russell, 682 N.E.2d at 517 n. 7.

There is No Equitable Adoption in Indiana

[32] The Indiana Supreme Court and this court have rejected equitable estoppel as an attempt to circumvent the statutory requirembrit' -that support orders be entered only against biological or adoptive fathers.[11] For example, in R.D.S., the husband and wife met when the' wife was visibly pregnant, and they married a few months later. After four years of holding the child out as his own, upon the dissolution of their marriage the dissolution court ordered the husband to pay support for the child.
[33] We reversed and held that the support order was not authorized because the child’was not a child of both parties to the marriage. R.D.S., 402 N.E.2d at 34, In reaching our holding, we explicitly rejected the following theories under which a husband in such circumstances might be ordered to pay child support: equitable adoption, equitable estoppel, in loco paren-tis, and an implied contract by the husband to provide support. Id. at' 32-33. In rejecting each of those -theories, we made clear that'“the provisions of the statute” and “legislative intent,” not equity, control the dissolution court’s authority to enter a child support order. R.D.S., 402 N.E.2d at *1086 34. Likewise, in Cochran v. Cochran, we recognized that “paternity by estoppel” is not a valid basis for a child support order in Indiana. 717 N.E.2d 892, 894-95 (Ind.Ct.App.1999). Similarly, in Friar v. Taylor, we held that equity cannot serve as a basis' for a child custody order under the Dissolution of Marriage Act. 545 N.E.2d 599, 600-01 (Ind.Ct.App.1989).
[34] In Hight, the Indiana Supreme Court expressly agreed with this court’s reasoning and conclusion in R.D.S. and said: '
In R.D.S., the Court of Appeals held that a child must be a child of both parties to the marriage to come -within the definition of “child” in [the Dissolution of Marriage Act] and to furnish the basis for child support. R.D.S., 402 N.E.2d at 34. As a consequence, the R.D.S. court rejected as a basis for imposing child support the husband’s ac-knowledgement or equitable adoption of a child he did not father. Id. In the present case, the trial court order regarding child support and visitation, based on [husband’s] acknowledgment of the child who he did not father, would have been subject to attack as exceeding the authority granted by the statutes.
547 N.E.2d at 269 (emphases added; footnote omitted).
[35] In other words, in Hight our supreme court agreed with R.D.S. that Indiana does not recognize “equitable adoption” and that a support order based on equity would “exceed[] the authority granted” by the Dissolution of Marriage Act. Id. Likewise, as Judge Baker wrote for this court in Seger v. Seger, “there is no equitable adoption in this state.” 780 N.E.2d 855, 858 (Ind.Ct.App.2002). Rather, adoption is controlled by statute. See I.C. §§ 31-19-1-1 to -29-6.

In Loco Parentis is an Insufficient Basis for a Support Order

[36] “In loco parentis means ‘in the place of a parent.’” In re Snow, 862 N.E.2d at 666 (quoting Black’s Law' Dictionary 803 (8th ed.2004)). In In re Snow, our supreme court held, as we had in R.D.S., that the status of in loco parentis is an insufficient basis for imposing a child support order on a stand-in parent. Id. at 667; see R.D.S., 402 N.E.2d at 32-33. As the court in In re Snow explained:
we see a number of public policies that militate against imposing a child support obligation on stand-in parents, such as custodians and guardians. First, we note that Indiana policy disfavors entering a support order against adults who are not natural parents. See Fairrow v. Fairrow, 559 N.E.2d 597 (Ind.1990) (statutes and sociological evidence favor supporting parent/child relationship; support order against adult known not to be parent is unjust).
Second, it makes little sense to require child support from a person in loco par-entis when that status is temporary in nature. and essentially voluntary. The stand-in parent would effectively be able to choose whether or not he or she should be required to pay child support simply by choosing to continue or discontinue the relationship. It also seems unwise to create a layer of financial risk .for adults who voluntarily provide financial and emotional support to children not their own. Lastly, it is difficult to imagine imposing parallel obligations on the institutions (like juvenile courts or universities) to which in loco parentis is commonly deployed. Therefore, we hold that when a relationship of in loco par-entis exists, that status alone is an insufficient basis for imposing a child support obligation on the stand-in parent.
*1087 862 N.E.2d at 667 (emphases. -added). Here, the facts disclose a classic case’of an in loco parentis relationship, as Husband voluntarily made himself the stand-in parent over G.B.S. during his marriage to Wife. The majority errs when it holds that a husband creates a lasting support obligation when he voluntarily assumes financial and emotional support over a child not his own. In loco■ parentis does not establish paternity, and a child support order cannot be entered against a- man who has only an in loco parentis relationship to the child. See id.
[37] In sum, Husband cannot be equitably estopped from claiming that G.B.S. is not a child of the marriage, and to hold otherwise is contrary to the plain meaning of the Dissolution of Marriage Act and exceeds the authority granted to our dissolution courts under the Act. A support order based on either an adoption by es-toppel or an in loco parentis relationship violates the Act and the precedent of our supreme court and this court. And-I cannot agree with the suggestion that our supreme court in Russell “did not address the equitable-estoppel aspect of R.D.S.” Op. at 1082. Rather, in Russell, our supreme court stated that, this court’s opinion in R.D.S. was “correct,” and, when Russell and R.D.S. are read together, it is clear that Russell approved of this court’s rationale in R.D.S. See Russell, 682 N.E.2d at 516-17. Regardless, it is clear from our supreme court’s opinions in Hight and In re Snow that the court, has approved of our conclusion in R.D.S. that equity does not supplant the statutory scheme.

Wife Has Not Stated a Claim for Equitable Relief

[38] In any event, Wife has not stated a claim for equitable relief. As a threshold matter, to state a claim for equitable relief a party must prove that her remedies at law are inadequate. Martin v. Heffelfinger, 744 N.E.2d 555, 558-59 (Ind.Ct.App.2001). “A legal remedy- is- adequate where it is as practical and efficient to the ends of justice and its prompt administration as the remedy in equity.” Id. at 559.
[39] Citing Indiana Code Section 31-14—5—3(b), the majority opinion first contends that Wife is entitled to equitable relief because her “opportunity to establish paternity in G.B.S.’s biological father has long passed” and that, “[t]o avoid injustice, Husband' is' equitably estopped” from claiming that G.B.S. is not a child of the marriage. Op. at 1081. But then, citing Indiana Code Section 31-14-5-2(a), the majority concedes in a footnote that Wife can still “file a paternity action as G.B.S.’s next friend.” Id. at 1081 n. 2.
[40] Wife testified before the dissolution court that she knows who G.B.S.’s biological father is, and she identified him by name. Wife, acting on G.B.S.’s behalf, may still establish paternity in G.B.S.’s biological father and, thus, she has an adequate remedy at law and cannot state a claim for equitable relief. Our supreme court has explained when equitable relief is unnecessary and unavailable to circumvent a statute, stating as follows:
Equity has the power, where necessary, to pierce rigid statutory rules to prevent injustice. But where substantial justice can be accomplished by following the law, and -where the parties’ actions are .clearly governed by the rules of law, equity, follows the law. In this case the rights, of the parties are clearly governed by the statute; and no injustice will result from following such statute. Therefore, equity in this case, must follow the law, there being no equitable reason for not doing so.
Metro. Sch. Dist. of S.W. Parke v. Vaught, 249 Ind. 412, 417, 233 N.E.2d 155, 158 (1968) (citation omitted).
*1088 [41] Equity follows the law. Here, the rights of the parties are clearly governed by the Dissolution of Marriage Act. And because Wife may still bring a paternity action on G.B.S.’s behalf, she cannot state a claim in equity that would circumvent the Act. As such, Wife has an adequate remedy at law and equitable relief is unnecessary.'
[42] We may not redefine the term “child,” a term already defined by our legislature. Our courts have repeatedly rejected equity as a means to overcome legislative intent. As our supreme court has explained, “there can be no inherent equity jurisdiction in the face of a statute specifically limiting the court’s jurisdiction in an otherwise valid statutory proceeding.” State ex rel. Root v. Circuit Ct. of Allen Cty., 259 Ind. 500, 506-07, 289 N.E.2d 503, 507 (Ind.1972); see also Ryan v. Ryan, 972 N.E.2d 359, 370 (Ind.2012) (‘We think it unlikely that a court can invoke equity to overcome the mandate of a statute_”). Here, there can be no equitable remedy because our legislature has clearly and unambiguously occupiéd the field and limited a dissolution court’s authority to enter a support order only for a child of both parties to the marriage, and a dissolution court generally has no equity jurisdiction to do otherwise. E.g., R.D.S., 402 N.E.2d at 32-34.

Husband Timely Objected to the Allegation of Paternity

[43] The Indiana Supreme Court and this court have held that under extraordinary circumstances ■ a husband before a dissolution court may be estopped from denying a child support order, but only where the husband did not timely challenge his paternity and the dissolution court had previously entered a final order against him. E.g., Tirey v. Tirey, 806 N.E.2d 360, 364-65 (Ind.Ct.App.2004), trans. denied. For example, in Tirey we held that a dissolution court “has the authority to enter a child support order in a dissolution proceeding against a non-parent ... so long as the obligated party agreed to that term and the agreement was not the product of artifice or mistake.” Id. at 365.
[44] In other words, when a husband does not timely challenge his paternity before the dissolution court, his subsequent challenge is barred by res judicata subject only to Trial Rule 60(B) review. As our supreme court stated in Russell, a husband is “precluded from later challenging [the dissolution court’s paternity] determination, except in extraordinary circumstances.” 682 N,E.2d at 518 (emphasis added) (citing Fairrow, 559 N.E.2d at 600 (holding that a husband was entitled to relief from a support judgment when he obtained “gene testing results [pursuant to an unrelated medical procedure after the.entry of- dissolution,] which gave rise to the prima facie case for relief ... independently of court action”)).[12]
[45] Here, in ordering Husband to pay support for G.B.S., the dissolution court first concluded that Husband should be equitably estopped under Tirey from challenging his paternity. But Husband’s pro *1089 cedural posture before the dissolution court is entirely different from the posture of the husband in Tirey. In particular,’ at the time Husband challenged his paternity over G.B.S., there had been no final judgment against Husband on the dissolution petition. Thus, Wife’s argument on appeal that Husband’s failure to object to the assertions of paternity in her petition for dissolution or in the court’s provisional orders is not well-taken in that neither the petition nor the provisional orders are equivalent to a final judgment. See, e.g., I.C. § 31-15-4-13 (“The issuance of a provisional order is without prejudice to the rights of the parties or the child as adjudicated at the final hearing in the proceeding.”). Husband timely objected to Wife’s allegation of paternity. Accordingly, the dissolution court erred when it relied on Tirey.

Levin v. Levin Is Inapposite

[46] Neither does Levin v. Levin apply in this case. Unlike in Levin, here Husband did not induce Wife to become pregnant by another man. Rather, she became pregnant through intercourse with another man without Husband’s prior knowledge or consent.
[47] In Levin our supreme court recognized that equity may apply to estop a husband from denying paternity in a dissolution action where he had induced his wife to become pregnant by a third party. 645 N.E.2d 601, 605 (Ind.1994). But nothing in Levin suggests that our supreme court sought to abrogate R.D.S. or Eight, and the subsequent decisions in Russell, Cochran, and In re Snow continued to reject equity as an appropriate basis for a child support order against a nonbiological and nonadoptive husband.
[48] Indeed, Levin is easily distinguished both substantively and procedurally from this case. In Levin, the Indiana Supreme Court affirmed our court’s opinion and concluded that the husband was equitably estopped from denying paternity on the grounds that he had induced the wife to become pregnant, and the court held that “as in the case of adoption” a child born under such circumstances is a “child of the marriage” under the Dissolution of Marriage Act. Id. Further, in Lev-in, as in Tirey, the husband did not object when the dissolution court found that the child was a child of both parties to the marriage and entered the dissolution decree. It was only in a subsequent Trial Rule 60(B) relief from judgment proceeding that the husband first raised the issue of whether the child conceived with the sperm of a third party donor was a child of both parties to the marriage. While the child in Levin was a child of both parties to the marriage, here G.B.S. is not a child of both parties to the marriage.
[49] The facts and procedural, posture in this case are not aligned with Levin but with R.D.S., in which the husband knew he was not the biological father of his already-pregnant wife’s child yet held himself out as such for several years before disclaiming paternity during dissolution proceedings. Again, after the trial court in R.D.S. nonetheless ordered the father to pay support, we reversed and vacated the support order. 402 N.E.2d at 35. We did not remand with instructions that the court maintain the fiction of husband’s paternity, despite the evidence, until paternity was properly established in another man. Id. The majority here is concerned that G.B.S. will be deemed a films nullius. That term applies in paternity actions, which cannot be used to disestablish paternity. This is not a paternity action. The only parentage issue in a dissolution of marriage is whether the child is a child of both parties to the marriage. In other words, in a dissolution action a husband is entitled to *1090 rebut the presumption of his paternity, and nothing more is required of him.
[50] Again, equity follows the law and cannot be used to circumvent the law. Justice Oliver Wendell Holmes, Jr. wrote that “[t]he standards of the law are standards of general application.” The Common Law 108 (1881). This means that the rule of law applies across the board. And if the law is applied evenly, as our legislature intended, we cannot resort to equity to achieve what we perceive to be a better outcome simply because the law as applied in a particular case may yield an imperfect result. As we stated in Cochran, “[w]e are not unsympathetic .to [the] argument[] that biology alone does not create a father” but, “ ‘in the end, such policy questions are the province of the legislature.’ ” 717 N.E.2d at 894-95 (emphasis added) (quoting Russell, 682 N.E.2d at 517 n. 7). Our first responsibility is to follow the plain meaning of the governing statutes. On this subject our legislature has spoken unambiguously and occupied the field with a comprehensive legislative scheme, and there is no legislative void left to be filled by judicial action on these facts.

Our Legislature Has Rejected the Majority’s Reasoning

[51] Our legislature has 'considered and expressly rejected estoppel and in loco parentis as a means to establish paternity. Indiana Code Section 31-14-7-2 clearly states that circumstances where, as here, “with the consent of the child’s mother, the man: (1) receives the child into the man’s home; and (2) openly holds the child out as the man’s biological child ... do not establish the man’s paternity.” Thus, our legislature has already addressed and rejected the majority’s reasoning that, on this fact pattern, Husband has assumed a duty to pay support. And our supreme court agrees. An in loco parentis relationship “generally may be terminated at any time.” In re Snow, 862 N.E.2d at 666. “[A]bsent. an intent to continue in loco parentis,, a stand-in parent does not have a duty to support following a marriage dissolution.” Id. at 666-67.

Conclusion

[52] This ’ court’s equity jurisdiction is not a license to disregard the unmistakable and unambiguous intent of our legislature and the plain meaning of a “Child or children of both parties to the marriage.” In effect, the majority has redefined a defined term and usurped a policy question that belongs to the legislature. See In re Snow, 862 N.E.2d at 668; Russell, 682 N.E.2d at 516-17. Indeed, the legislature has already rejected equitable paternity. See I.C. § 31-14-7-2. The question presented has also been considered and decided by both our supreme court and this court in numerous cases, both under the Dissolution of Marriage Act and under pri- or law going back at least seven decades. See, e.g., Pilgrim, 75 N.E.2d at 162. Neither our legislature nor our courts have recognized adoption by estoppel or paternity by in loco parentis. The majority opinion is contrary to Indiana Supreme Court precedent in Hight, Russell, and In re Snow and is a radical departure from our well-settled family law. .
[53] Paternity and a duty to pay child support • are indivisible. In Indiana, a man’s paternity is a condition precedent to a child support order against him. The majority opinion is contrary to law. The child in this case is not a child of both parties to the marriage. Husband and other Indiana husbands similarly situated have a reliance interest in the certainty afforded by the plain meaning of the statute and well-settled precedent. If the majority opinion stands, it will not only reverse decades of - precedent but will also introduce- uncertainty into child support determinations. In order to avoid the risk *1091 of an “equitable” child support order, a husband who knows or suspects that his wife’s child is not his child but is the child of another man will now be encouraged, if not compelled, to disavow paternity as soon as possible and rupture the marriage rather than to keep the marriage and family intact.
[54] Thus, I respectfully dissent.

. I agree with the resolution of the vehicle expenses in footnote 9 of the majority opinion, See Op. at 1083-84 n.9.

. We have also considered and rejected the concept of equitable adoption in the context of intestate succession. Namely, in Lindsey v. Wilcox, we held that "no compelling reason surfaces to create a judicial doctrine [of equitable adoption] to serve the same purpose when the statutory schemes of probate or adoption seem quite adequate.” 479 N.E.2d 1330, 1332-33 (Ind.Ct.App.1985), trans. denied.

. As the majority notes, the court in Russell further acknowledged that a mother may be equitably estopped from arguing against her husband's paternity where she was not seeking to establish paternity in another man, her husband had been unaware that he might not be the child’s biological father, and he hád not challenged his own paternity during the dissolution proceedings. 682 N.E.2d at 518— 19 (citing In re Marriage of K.E.V., 267 Mont. 323, 883 P.2d 1246 (Mont.1994)); see also Myers, 13 N.E.3d at 482-84 (holding that the mother was barred by laches from challenging the dissolution court's final judgment, which had established husband's paternity, in a subsequent proceeding). But those circumstances simply do not apply in this appeal.