**In re the Marriage of Alison L. COCHRAN, Appellant–Respondent,**

v.

**Robert L. COCHRAN, Appellee–Petitioner.**

**No. 28A05–9903–CV–130.**

Court of Appeals of Indiana.

Oct. 12, 1999.

---

Robert C. Price, Price & Runnells, Bloomington, Indiana, Attorney for Appellee.

## OPINION

KIRSCH, Judge

Alison L. Cochran appeals the trial court's judgment that a child born to her during the time of her marriage to Robert L. Cochran, but fathered by another man, was not a child of the marriage, and thus not entitled to child support from Robert. Alison presents the following issue for our review: whether a dissolution court must disestablish the paternity of a child born during the marriage when the child is not the biological child of the husband.

We affirm.

## FACTS AND PROCEDURAL HISTORY

The Cochrans were married on June 20, 1992. One year later Alison gave birth to L.C., who later was determined by the dissolution court to be the couple's only child. In the spring of 1995, the Cochrans were experiencing marital problems, and Alison became involved with another man. On December 9, 1995, Alison gave birth to her second child, U.C. Prior to the birth of U.C., the couple decided to resolve their marital difficulties. Apparently believing U.C. to be his biological child, Robert assumed the role of his father.

On June 16, 1997, Robert petitioned for dissolution of the marriage alleging in his verified petition that there were two children of the marriage, L.C. and U.C. On July 11, 1997, Alison filed a cross-petition for dissolution. Provisional custody, support, and visitation orders were issued with respect to the two children. On October 17, 1997, Robert filed a Petition to Establish Paternity requesting that the entire family be required to submit to DNA testing. This petition was apparently prompted by Robert learning that Alison was pregnant with a third child, who was

Paul J. Watts, Pete S. Raventos, Watts Law Office, Spencer, Indiana, Attorneys for Appellant.

not fathered by him, which aroused his suspicion that U.C. was also not his biological child. The results of the DNA testing excluded Robert as U.C.'s biological father. The dissolution court entered its Decree of Dissolution finding only L.C. to be a child of the marriage.

## DISCUSSION AND DECISION

Alison argues that the dissolution court erred in granting Robert's request to disestablish paternity of U.C., a child born during the marriage. She contends that the court's ruling was contrary to Indiana's dissolution statute and case law, to the child's best interests, and to public policy. Alison claims that the result in this case is especially detrimental where the statute of limitations has expired for her to establish paternity in the biological father.[1] Alison therefore argues that Robert should be estopped to deny paternity.

■ As Alison notes, the appellate courts of this State have "grappled with this issue, attempting to determine legislative intent and to balance the best interests of the child, the putative father's rights and the important public policy issues involved." *Appellant's Brief* at 9. However, our supreme court rejected the view that the definition of a "child of the marriage" under IC 31–1–11.5–2(c) means that a child born during the course of the marriage is a child of the marriage regardless of whether the husband is the child's biological father. *Russell v. Russell*, 682 N.E.2d 513, 516 (Ind.1997). In rejecting this interpretation, the supreme court stated that "[a child of the marriage] includes children born out of wedlock as well as children born or adopted during the marriage—as long as both parties are the natural parents (or adopted the child)." *Id.* at 517. Our supreme court held that "[b]efore the dissolution court may make a

child custody or support determination, it must first determine whether it has jurisdiction to do so, i.e., whether the child at issue is a 'child of the marriage.'" *Id.* at 515. To be a child of the marriage, the child must be either a biological or adopted child of both parents. *Russell* is dispositive of the issue in the instant case.

■ Prior to the dissolution court entering support, custody, and visitation orders, the court must first resolve the question of whether the child is a child of the marriage i.e., a biological child of both parents. Thus, the trial court did not err by granting Robert's request for DNA testing. Where the issue of whether child is a child of the marriage is "vigorously contested," the dissolution court has the authority to order blood testing to make a paternity determination. *Id.* at 518 (citing *Cooper v. Cooper*, 608 N.E.2d 1386 (Ind.Ct. App.1993)). Nonetheless, Alison asserts that the dissolution court created a fatherless child and "disenfranchised U.C." *Appellant's Brief* at 10. Yet, under *Russell* if the dissolution court did not determine if U.C. was a child of the marriage, it would lack the authority to enter support, custody, or visitation orders. Moreover, a child born to a married woman, who is fathered by a man other than her husband is deemed to be a "child born out of wedlock." *K.S. v. R.S.*, 669 N.E.2d 399, 402 (Ind.1996) (citations omitted). This longstanding common law rule combined with the fact that a child is presumed to be a child of the marriage unless rebutted, leads us to conclude that this is not a case where a man is seeking to disestablish his own paternity status. Such status never existed in the first place.

We are not unsympathetic to Alison's arguments that biology alone does not create a father and note that other states have recognized paternity by estoppel.[2]

---

1. Alison overlooks the fact that under IC 31–14–5–2, she may bring a paternity proceeding against the biological father in the name of the child until the child is eighteen. IC 31–14–5–2.

2. For an excellent overview of the doctrine of paternity by estoppel, see *B.E.B. v. R.L.B.*, 979 P.2d 514 (Alaska 1999).

However, the *Russell* court noted that an equally important policy consideration is correctly identifying parents and their offspring. *Russell*, 682 N.E.2d at 517. The court wrote:

> " 'Proper identification of parents and child should prove to be in the best interests of the child for medical or psychological reasons. It also plays a role in the just determination of child support; we have already declared that public policy disfavors a support order against a man who is not the child's father.' "

*Id.* at 517 n. 7 (quoting *In re SRI*, 602 N.E.2d 1014, 1016 (Ind.1992)). We decline Alison's invitation to balance these competing policies in her favor. As the *Russell* court noted, "[i]n the end, such policy choices are the province of the legislature." *Id.*

The judgment of the trial court is affirmed.[3]

DARDEN, J., and BROOK, J., concur.

---

3. Robert has requested appellant attorney fees contending that Alison's appeal is meritless. We deny this request. We note that Robert's brief is deficient in a number of respects and remind counsel that "[o]verheated rhetoric is unpersuasive and ill-advised. Righteous indignation is no substitute for a well-reasoned argument." *WorldCom Network Servs., Inc. v. Thompson*, 698 N.E.2d 1233, 1236–37 (Ind.

Ct.App.1998). A brief cannot "be used as a vehicle for the conveyance of hatred, contempt, insult, disrespect, or profession discourtesy of any nature for the court of review, trial judge, or opposing counsel." *Pittsburgh, Cincinnati, Chicago & St. Louis Ry. Co. v. Muncie & Portland Traction Co.*, 166 Ind. 466, 466, 77 N.E. 941, 941–42 (1906).