# FOR PUBLICATION



ATTORNEYS FOR APPELLANT:

**LEAH R. BURRIS**
Zionsville, Indiana

**DONNA JAMESON**
Greenwood, Indiana

ATTORNEY FOR APPELLEE:

**KEVIN HOOVER**
Hill Fulwider
Indianapolis, Indiana

ATTORNEYS FOR GUARDIAN
AD LITEM:

**DEBORAH M. AGARD**
**DANIEL W. KIEHL**
Law Office of Deborah M. Agard
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| JACQUELINE MYERS, | ) |
| | ) |
| Appellant/Respondent, | ) |
| | ) |
| vs. | ) No. 49A02-1310-DR-895 |
| | ) |
| MARK MYERS, | ) |
| | ) |
| Appellee/Petitioner. | ) |

APPEAL FROM THE MARION SUPERIOR COURT
The Honorable Thomas J. Carroll, Judge
The Honorable Christopher Haile, Magistrate
Cause No. 49D06-0507-DR-26923

**July 15, 2014**

**OPINION – FOR PUBLICATION**

**VAIDIK, Chief Judge**

## Case Summary

Jacqueline Myers ("Mother") filed a notice of intent to relocate from Indiana to Texas with her daughter, fourteen-year-old H.M. Mark Myers ("Father") objected and filed a motion to prevent Mother's relocation with H.M., which the trial court granted following an evidentiary hearing. Mother now appeals. She contends that because H.M. is not a child of the marriage, Father could not object to her relocation and the trial court should not have entertained issues related to H.M.'s custody. She also argues that the court erred by denying her relocation request.

We conclude that the presumption that H.M. is a child of the marriage has not been rebutted; thus, H.M.'s relocation was properly before the court upon Father's valid objection. We also conclude that the trial court did not err in finding that Mother did not meet her burden of proof in seeking to relocate. We do find, however, that the trial court erred in ordering that Father would receive automatic physical custody of H.M. if Mother moved to Texas. We affirm in part and reverse in part.

## Facts and Procedural History

Mother and Father have six children.[1] H.M., born in 2000, is their youngest child. The parties divorced in 2006. During the dissolution proceedings, Mother informed Father that he was not H.M.'s biological father.

In the decree of dissolution, the Marion Superior Court discussed H.M.'s paternity:

---

[1] Two of the parties' children were adopted from Paraguay, where the parties lived and worked as missionaries until 2002.

Father is not [H.M.'s] biological [father], but is the product of an affair Mother had while she was in Paraguay. However, the parties have always held out Father to be [H.M.'s] father and Father is identified as such on [H.M.'s] birth certificate.

\* \* \* \* \*

With respect to [H.M.], the court has reservations about its subject[-]matter jurisdiction to enter orders. It is clear that Father has failed to establish that Mother is unfit such that he may be awarded third[-]party custody. It is also clear that Father has acted as a parent to H.M. and is the only father known to the child. Indeed Mother testified that Father should have guideline parenting time with [H.M.] . . . . [T]he Court finds that treating H.M. different[ly] from [the other children] for parenting time would not be in her best interests. The Court therefore finds that Father should have [] [p]arenting [t]ime with [H.M.] . . . .

\* \* \* \* \*

In making a custody determination between a natural parent and a non-parent, such as the situation in this case with respect to [H.M.], the court presumes the parent has a superior right to custody, but the non-parent can overcome this presumption by showing . . . the unfitness of the natural parent.

\* \* \* \* \*

Each parent shall have Indiana Parenting Time with the children not in their custody, including [H.M.].

Appellant's App. p. 15, 19, 22 (formatting altered). The parties did not appeal this order.

Six years passed, during which time Father continued to act as H.M.'s parent without objection from Mother.

In 2012 Father filed a motion to modify custody and child support.[2] The trial court appointed a guardian ad litem (GAL) to represent the interests of H.M., now a teenager. Father's modification petition was granted with respect to the parties' son

---

[2] This petition is not in the record. However, the record suggests that Father sought primary physical custody of H.M. and the parties' son M.M.

3

M.M., but not H.M. *See id.* at 8 (CCS entry noting that "Father shall have sole legal and primary physical custody of [the parties' child] [M.M] . . . ."). H.M. continued to live primarily with Mother. Mother was also ordered to pay Father child support at this time. Mother did not challenge Father's continued right to exercise parenting time with H.M. during this new round of legal proceedings.

Just a few months later, Mother filed notice of her intent to relocate to Texas. *Id.* at 10 (CCS). Father and the GAL filed objections. *Id.* The trial court held a hearing on the issue of relocation in October 2013.

Mother testified that she wished to relocate to Texas for financial reasons. Tr. p. 7, 15. She said that she was having difficulty paying her living expenses and owed a large amount of money in attorney fees. *Id.* at 14. She believed she could live rent-free in Texas with her cousins. *Id.* at 7, 9. Mother quit her job before the relocation hearing and accepted a job at a podiatrist's office in Texas. *Id.* at 15. However, Mother admitted that she would earn the same salary in Texas as she had in Indiana. *Id.* at 16. She also admitted that H.M. had no real connection to Texas: Father's family was located in Indiana, and H.M. had no friends in Texas. *Id.* at 29, 31. H.M. had extracurricular ties to Indiana as well—she took piano lessons and dance classes in Indiana, and she was involved in her local church. *Id.* at 28, 34.

At the conclusion of the hearing, the trial court dismissed Mother's motion, saying:

> [Mother], we had a hearing on the modification of custody [for H.M.], I denied that motion because from what I heard there was no basis to change custody, but quite frankly your judgment in this move to Texas, and quitting your job, it raises a lot of doubts with the [c]ourt about your

4

judgment, quite honestly. I'm a little flabbergasted after all we went through earlier this year that you would come back to this [c]ourt on this type of situation. [H.M.] has no friends there, her father is here, her siblings are here, her school is here, her piano teacher is here, you're taking a job that pays the same amount of money that the job you had here [did], there's no showing that you couldn't find other part time work, a different kind of job, you didn't petition the court to lower your child support, you've been temporarily staying with other people here without any rent [], *there's absolutely no basis for a good[-]faith relocation of H.M.*

*Id.* at 66-67 (emphasis added). The court later entered an order formally denying Mother's request to relocate. The order included the following:

*[Mother] has not met her burden of establishing that the relocation is made in good faith* and is in the best interests of [H.M.].

The court orders that [Mother] shall not relocate to Texas with [H.M.].

The court orders that if [Mother] still intends to relocate to Texas[,] . . . custody of [H.M.] shall be modified and awarded to [Father]; [Mother] shall have parenting time pursuant to the Indiana Guidelines . . . .

Appellant's App. p. 12 (emphasis added, formatting altered). Mother now appeals.

## Discussion and Decision

On appeal, Mother contends that H.M. is not a child of the marriage. For this reason, Mother argues that Father is not a nonrelocating parent who may object under the relocation statute, and the trial court should not have entertained issues related to H.M.'s custody. Mother also claims that the trial court erred in rejecting her relocation request.

### I. H.M.'s Paternity

Mother contends that, because H.M. is not a child of the marriage, Father is not a nonrelocating parent[3] entitled to object to her relocation. We disagree.

_____

[3] Indiana Code section 31-17-2.2-5(a) allows a nonrelocating parent to object to a relocation request:

Mother argues that "it is well established in the court record that [Father] is not [H.M.'s] biological father and [H.M.] is not a child of the marriage as she is not the biological child of both parties and has not been adopted by [Father]." Appellant's Br. p. 11-12. But H.M. was born in 2000 when Mother and Father were married, and Father signed H.M.'s birth certificate. H.M. is, by definition, a child of the marriage, and she is presumed to be Father's biological child. *See* Ind. Code § 31-14-7-1(1). Mother appears to assert, referencing the trial court's dissolution order, that she rebutted the presumption that H.M. is a child of the marriage. We are not so convinced.

The trial court's dissolution order, which neither party appealed, is contradictory. It states that H.M. is not Father's biological child. Yet it grants parenting time— according to the Indiana Parenting Time Guidelines—to Father, something it would lack authority to do if it had in fact determined that H.M. was not a child of the marriage. *See Cochran v. Cochran*, 717 N.E.2d 892, 894 (Ind. Ct. App. 1999) ("[I]f the dissolution court did not determine if [the child] was a child of the marriage, it would lack the authority to enter support, custody, or visitation orders."), *trans. denied*.

Not later than sixty (60) days after receipt of the notice from the relocating individual . . . a nonrelocating parent may file a motion seeking a temporary or permanent order to prevent the relocation of a child.

> (b) On the request of either party, the court shall hold a full evidentiary hearing to grant or deny a relocation motion under subsection (a).

> (c) The relocating individual has the burden of proof that the proposed relocation is made in good faith and for a legitimate reason.

> (d) If the relocating individual meets the burden of proof under subsection (c), the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the best interest of the child.

> (e) If the nonrelocating parent fails to file a motion under subsection (a), the relocating individual who has custody of the child may relocate to the new residence.

Moreover, the presumption that Father is H.M.'s father could have been rebutted only "by direct, clear, and convincing evidence." *Fairrow v. Fairrow*, 559 N.E.2d 597, 600 (Ind. 1990) (citation omitted); *see also Buchanan v. Buchanan*, 256 Ind. 119, 124 (1971) (when a child is born during a marriage, "a trial court cannot rule against [the husband's paternity] except on facts which prove conclusively that the husband could not have been the father."). The trial court's dissolution order does not mention the types of evidence traditionally used to rebut the marriage presumption for paternity:

> That a husband (1) is impotent; (2) was absent so as to have no access to the mother; (3) was absent during the entire time the child must have been conceived; (4) was present with the mother only in circumstances which clearly prove there was no sexual intercourse; (5) was sterile during the time the child must have been conceived; or (6) is excluded as the child's father based upon blood grouping test results.

*Minton v. Weaver*, 697 N.E.2d 1259, 1260 (Ind. Ct. App. 1998) (quotation omitted), *trans. denied*. Nor does it mention DNA testing, which has emerged as the principal method of determining paternity. In a recent published dissent from the denial of a petition to transfer, Chief Justice Dickson noted this and stated:

> [W]ith the advent of genetic testing, courts now have a virtually foolproof way to make paternity determinations. This methodology is overwhelmingly superior to reliance on traditional testimonial methods of proof. Only DNA testing can satisfy the high standard of proof required to rebut the presumption of paternity—evidence that is "direct, clear, and convincing" . . . and that disproves the presumption "conclusively[.]" For this reason, I believe that in any proceeding in which the presumption of biological paternity is potentially impinged, DNA testing, if available, should be mandatory as the exclusive way of providing conclusive, direct, clear, and convincing evidence to rebut the presumption. Without supporting DNA genetic evidence, courts should not make any judicial determination that a child's biological father is someone other than the biological mother's husband when the child was born. Nothing else should suffice.

*In re Paternity of I.B.*, 5 N.E.3d 1160, 1161 (Ind. 2014) (Dickson, C.J., dissenting to the denial of transfer, joined by Rush, J.).

Absent conclusive, direct, clear, and convincing evidence, and in light of the contradictory dissolution order, we cannot say that the presumption that H.M. is a child of the marriage has been rebutted.[4]  This conclusion is bolstered by the parties' and the trial court's post-dissolution conduct: Mother has never challenged Father's right to parent H.M., Father sought custody of H.M. at one point, and the court ordered that Father would have automatic custody of H.M. if Mother moved to Texas.  We therefore conclude that Father is a nonrelocating parent capable of challenging Mother's relocation request.[5]

Mother also argues that, because H.M. is not a child of the marriage, the trial court should not have entertained issues related to H.M.'s custody.  We disagree, as we have already concluded that the child-of-the-marriage presumption has not been rebutted.  Moreover, Mother has never challenged the trial court's authority to hear custody issues relating to H.M.  She had numerous chances to do so—during the dissolution proceeding or in any later proceeding—but she did not.  The doctrine of laches prevents her from doing so now.

"Laches is neglect for an unreasonable length of time, under circumstances permitting diligence, to do what in law should have been done."  *Vanderbilt v.*

---

[4] In cases where a mother and father of a child are attempting to stipulate or otherwise agree that a child is not a child of the marriage, "it is well within the discretion of the trial court to withhold approval [of such a stipulation] until paternity has been established in another man." *Russell v. Russell*, 682 N.E.2d 513, 518 (Ind. 1997).

[5] Because we conclude that Father is a nonrelocating parent capable of objecting to Mother's relocation, we need not consider whether the GAL had standing to object to Mother's relocation.

8

*Vanderbilt*, 679 N.E.2d 909, 910 (Ind. Ct. App. 1997) (doctrine of laches prevented mother from challenging father's paternity seven years after child's birth) (citation omitted), *trans. denied.* Laches requires: 1) inexcusable delay in asserting a right; 2) implied waiver of the right arising from knowing acquiescence in existing conditions; and 3) circumstances causing prejudice to the adverse party. *Id.*

Father was identified as H.M.'s father on her birth certificate. Then, seven years after H.M.'s birth, Mother suddenly revealed that H.M. was not Father's biological child. But when this information came to light, Father continued to act as H.M.'s parent. He is the only father that H.M., now a teenager, has ever known. Mother, meanwhile, has never challenged Father's right to act as H.M.'s parent; rather, she knowingly acquiesced in the status quo for the whole of H.M.'s life and throughout numerous court proceedings. Mother's actions have prejudiced Father, and she may not now challenge Father's parenthood.

### III. Relocation

#### *A. Denial of Relocation*

We now turn to Mother's arguments regarding relocation. She argues that the trial court erred in finding that she did not meet her burden of proving good faith and legitimate reasons for relocation.

When a parent files a notice of intent to relocate, the nonrelocating parent may object by moving to modify custody or to prevent the child's relocation. Ind. Code § 31-17-2-2-5(a). If the nonrelocating parent objects, the burden is on the relocating parent to show that the proposed relocation is made in good faith and for a legitimate reason. Ind.

9

Code § 31-17-2.2-5(c). If the relocating parent meets that burden, then the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the child's best interests. Ind. Code § 31-17-2.2-5(d).

In considering the proposed relocation, the trial court must weigh the following factors:

(1) The distance involved in the proposed change of residence.

(2) The hardship and expense involved for the nonrelocating individual to exercise parenting time or grandparent visitation.

(3) The feasibility of preserving the relationship between the nonrelocating individual and the child through suitable parenting time and grandparent visitation arrangements, including consideration of the financial circumstances of the parties.

(4) Whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child.

(5) The reasons provided by the:

(A) relocating individual for seeking relocation; and

(B) nonrelocating parent for opposing the relocation of the child.

(6) Other factors affecting the best interest of the child.

Ind. Code § 31-17-2.2-1(b). "Other factors affecting the best interest of the child" include, among other things, the child's age and sex; the parents' wishes; the child's wishes, with the wishes of children fourteen years or older being given more weight; the child's relationship with parents, siblings, and any other person affecting the child's best

10

interests; and the child's adjustment to home, school, and the community. Ind. Code § 31-17-2-8; *see also Baxendale v. Raich*, 878 N.E.2d 1252, 1256 (Ind. 2008).

Here, although neither party requested specific findings of fact and conclusions thereon, the trial court sua sponte made findings in determining that Mother's relocation request was not made in good faith and for a legitimate purpose. Our standard of review in this instance is well settled:

> Pursuant to Indiana Trial Rule 52(A), we do not set aside the findings or judgment unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of witnesses. Where, as here, the findings and conclusions are entered sua sponte, the specific findings control only as to the issues they cover, while a general judgment standard applies to any issues upon which the trial court has not found, and we may affirm a general judgment on any theory supported by the evidence adduced at trial.

*Kietzman v. Kietzman*, 992 N.E.2d 946, 948 (Ind. Ct. App. 2013) (citations and quotations omitted).

With this standard in mind, our Supreme Court has expressed a preference for granting latitude and deference to our trial judges in family-law matters. *In re Marriage of Richardson*, 622 N.E.2d 178, 178 (Ind. 1993). Recently, it emphasized this principle once again, stating that such deference is necessary because of trial judges' "unique, direct interactions with the parties face-to-face." *Best v. Best*, 941 N.E.2d 499, 502 (Ind. 2011). "Thus enabled to assess credibility and character through both factual testimony and intuitive discernment, our trial judges are in a superior position to ascertain information and apply common sense, particularly in the determination of the best interests of the involved children." *Id.*

11

At the relocation hearing, Mother testified that she wished to relocate to Texas for financial reasons. She said that she was having financial difficulties and she believed she could live rent-free in Texas with her cousins. Mother testified that she had accepted a job at a podiatrist's office in Texas. However, Mother admitted that she would earn the same salary in Texas as she had in Indiana. She also admitted that H.M. had no real connection to Texas: Father's family was located in Indiana, and H.M. had no friends in Texas. H.M. also had extracurricular ties to Indiana—she took piano lessons and dance classes in Indiana, and she was involved in her local church. At the conclusion of the hearing, the trial court denied Mother's request, stating:

> [H.M.] has no friends there, her father is here, her siblings are here, her school is here, her piano teacher is here, you're taking a job that pays the same amount of money that the job you had here [did], there's no showing that you couldn't find other part time work [here], a different kind of job, you didn't petition the court to lower your child support, you've been temporarily staying with other people here without any rent . . . .

Tr. p. 66-67. The trial court also noted that Mother's relocation request followed closely on the heels of a recent custody modification in Father's favor. *Id.*

On appeal, Mother takes particular issue with the trial court's view of her new job.[6] She admits that initially her salary would be the same as her Indiana salary, but she argues that she could potentially earn more in the future. Appellant's Br. p. 16. She also argues that she was, in fact, paying rent in Indiana, she has many family members in

---

[6] Mother also argues that the trial court failed to consider certain factors in the relocation statute; particularly that she has never interfered with Father's parenting time or been found to be in contempt of court. *See* Appellant's Br. p. 17-18, 21. Indiana Code section 31-17-2.2-1(b)(4) requires a court to consider "whether there is an established pattern of conduct by the relocating individual, including actions by the relocating individual to either promote or thwart a nonrelocating individual's contact with the child." Because there was no evidence of this, it was not relevant to the trial court's determination.

Texas, and Father is financially able to travel to Texas. *Id.* at 17-18. These arguments are a request to reweigh the evidence, which we will not do.[7]

We cannot say, after review of the evidence, that the trial court erred in finding that Mother did not meet her burden of proving good faith and legitimate reasons for relocation.[8]

*B. Automatic Change of Custody*

Last, Mother argues that the trial court erred when it ordered that Father would have custody of H.M. if Mother moved to Texas. *See* Appellant's App. p. 12 ("The court orders that if [Mother] still intends to relocate to Texas[,] [] custody of [H.M.] *shall be modified* and awarded to [Father] . . . .") (emphasis added).

An automatic, future custody modification order violates Indiana's custody modification statute. *Bojrab v. Bojrab*, 810 N.E.2d 1008, 1012 (Ind. 2004). Specifically, language ordering that custody shall be automatically modified in the event of one parent's relocation "is inconsistent with the requirements of the custody modification statute[.]" *Id.* By contrast, language declaring that a present award of custody is

---

[7] Moreover, the cases upon which Mother relies are factually distinguishable. *See In re T.L. v. J.L.*, 950 N.E.2d 779 (Ind. Ct. App. 2011) (relocating mother's family—including ill family members who needed care—lived in another state and offered to finance her education there), *reh'g denied*; *Fridley v. Fridley*, 748 N.E.2d 939 (Ind. Ct. App. 2001) (relocating mother lost her job due to a staff reduction; she applied for a similar job in Indiana but was not offered the job); *In re Paternity of X.A.S.*, 928 N.E.2d 222 (Ind. Ct. App. 2010) (father remarried and wished to relocate because his new wife was a naval officer stationed in California), *trans. denied*; *Rogers v. Rogers*, 876 N.E.2d 1121 (Ind. Ct. App. 2007) (relocating parent accepted new job for an increased salary and because no full-time positions were available to her in Indiana), *trans. denied*.

[8] Mother also argues that the "burden of proof is on the nonrelocating parent to establish that the relocation is not in the child's best interests." Appellant's Br. p. 19. She is correct. If the nonrelocating parent objects to relocation, the burden is on the relocating parent to show that the proposed relocation is made in good faith and for a legitimate reason. Ind. Code § 31-17-2.2-5(c). *If the relocating parent meets that burden*, then the burden shifts to the nonrelocating parent to show that the proposed relocation is not in the child's best interests. Ind. Code § 31-17-2.2-5(d). Because Mother did not meet her burden in this case, Father's burden of proof was never triggered.

13

conditioned upon the continuation of a child's place of residence is proper as "a determination of present custody under carefully designated conditions." *Id.* As the Court explained in *Bojrab*:

> There is a significant difference between the two phrases. One purports to automatically change custody upon the happening of a future event; the other declares that the present award of custody is conditioned upon the continuation of the children's place of residence. While the automatic future custody modification violates the custody modification statute, the conditional determination of present custody does not.

*Id.*

In this case, the trial court's order operated to automatically modify custody upon the happening of a future event—Mother's relocation to Texas. This was error, and we reverse the portion of the trial court's order that automatically grants Father primary custody of H.M. if Mother relocates to Texas.

Affirmed in part and reversed in part.

NAJAM, J., and BROWN, J., concur.

14