VAIDIK, Chief Judge.
Case Summary
[1] While Benjamin Sheetz (“Husband”) and Ronnie Sheetz (“Wife”) were married and Husband was in prison, Wife got pregnant by another man. Nevertheless, Husband agreed to raise the child as his own and did so for twelve years. He also told Wife not to contact the biological father, not to seek support fiJom him, and not to institute paternity proceedings. Wife later filed for divorce, and at the final hearing, the parties entered into evidence a stipulation that although the child was born during the marriage, Husband is not the child’s biological father. The trial court nonetheless ordered Husband to pay support for the child, and Husband now appeals.
[2] Under these circumstances where Husband told Wife when she was pregnant that he would raise the child as his own (and he did so for twelve years), Husband told Wife not to tell the biological father, not to seek support from him, and not to file a paternity action, and Wife relied on Husband’s representations in not establishing paternity in the biological father, we find that Husband is equitably es-topped from rebutting the presumption that he is the child’s biological father. We therefore affirm the trial court.
Facts and Procedural History
[3] Husband and Wife married in April 2002. Shortly thereafter, Husband was sent to prison. While he was in prison, Wife became pregnant by another man. When Wife was about twelve weeks pregnant, she told Husband that she was pregnant by another man. At first, Husband was upset. Wife offered to file for divorce, but Husband said no. They eventually agreed to tell everyone that she became pregnant during a conjugal visit, that she would not tell the biological father that she was pregnant with his child, and that they *1079 would raise the baby “as [their] own child.” Tr. p. 72,142.
[4] Shortly after Husband’s release from prison, Wife gave birth to G.B.S. on May 17, 2003. Husband was present at the birth and signed the birth certificate as “father.” Id. at 78. Husband did not want Wife to contact the biological father, to seek support from him, or to institute paternity proceedings. Id. at 77, 143. Husband and Wife then had two more children.
[5] For the next twelve years, Husband held G.B.S. out to the world and to G.B.S. as his child. Of their three children, Husband had the “closest relationship” with G.B.S. Id. at 76. When discussing the possibility of divorce in 2010, Wife asked Husband if they should tell G.B.S. that Husband was not his biological father, and Husband said “whether [they] were married or divorced he was [G.B.S.]’s dad[,] period.” Id. at 147.
[6] Wife filed for divorce in May 2014 and claimed that the three children were children of the marriage. Appellant’s App. p. 26. Husband did not object to Wife’s claim that G.B.S. was a child.of the marriage. The trial court then entered provisional orders for Husband to pay child support for all three children. Again, Husband did not object to paying child support for G.B.S.
[7] The week before the September 2015 final hearing, Wife, upon the advice of G.B.S.’s counselor, told G.B.S. that Husband was not his biological father. At the final hearing, Husband and Wife admitted into evidence the following stipulation:
[Husband and Wife] stipulate and agree that [Husband] is not the natural father of [G.B.S.], who was born during the marriage of the parties. [Wife], by so stipulating, is not waiving the right to seek child support for the benefit of said child.
Id. at 52. Wife testified that she knows the name of G.B.S,’s biological father but that it had been “a long time” since she had had any contact with him and that she did not know where he lives. Tr. p. 108.
[8] In dissolving the parties’ marriage, the trial court entered findings and conclusions. .Specifically, the trial court found that Husband induced Wife “to forego establishment of paternity and child support for [G.B.S.] from his biological father, and promised that he would provide support for him.” Appellant’s App. p. 15. Also, the court found that Wife “firmly believed that both she and Husband would be responsible for [G.B.S.].” Id. Accordingly, the court concluded that Husbánd was “es-topped from denying his obligations to [G.B.S.]” because “[t]o hold otherwise would be unjust” and “an injustice to a young man who was led to believe that [Husband] [was] his father when he is not.” 'Id. (quotation omitted). The court therefore ordered Husband to pay child support for G.B.S. In addition, the court awarded custody of the three children to Wife. While the parties were separated, the court had issued a no-contact order that prohibited Husband from having contact with Wife and the three children. The court therefore deferred the issue of Husband’s parenting time of the three children “until such time that the No Contact Order is terminated.” Id. at 21.
[9] Husband now appeals.
Discussion and Decision.
[10] Husband contends that the trial court erred-in ordering'him to pay child support for G.B.S. because even though G.B.S. was born during his marriage to Wife, G.B.S. is not his biological child.
[11] The trial court entered findings and conclusions in this, case sua sponte. In such a casé, the specific find *1080 ings control only with respect to issues they cover, and a general-judgment standard applies to issues outside the findings. In re Marriage of Sutton, 16 N.E.3d 481, 484-85 (Ind.Ct.App.2014). The trial court’s findings or judgment will be set aside only if they are clearly erroneous. Id. at 485. A finding is clearly erroneous only if there are no facts or inferences drawn therefrom to support it. Id.
[12] A dissolution court must determine whether a child is a child of, the marriage for purposes of custody, support, and parenting time. Russell v. Russell, 682 N.E.2d 513, 517 (Ind.1997); see also Ind.Code art. 31-16 & 31-17. “Child” means “a child ... of both parties to the marriage” and includes “[c]hildren born out of wedlock to the parties” and “Children born or adopted during the marriage of the parties.” Ind.Code § 31-9-2-13.
[13] For some years, different panels of this Court disagreed as to whom the legislature intended to include as a child of a marriage. Compare R.D.S. v. S.L.S., 402 N.E.2d 30 (Ind.Ct.App.1980), with Russell v. Russell, 666 N.E.2d 943 (Ind.Ct.App.1996), trans. granted. Our Supreme Court, siding with R.D,S., held that the legislature intended that children born , out of wedlock as well as children born or adopted during the marriage are children of the, marriage “as long as both parties are the natural parents (or adopted the child).” Russell, 682 N.E.2d at 517.
[14] In a dissolution action, a man is presumed to be a child’s biological father if the man and the child’s biological mother are married to each other and the child is born during the marriage. Ind. Code § 31-14-7-1. This presumption can be rebutted by “direct, clear, and convincing evidence.” Myers v. Myers, 13 N.E.3d 478, 482 (Ind.Ct.App.2014) (quotation omitted). A stipulation between the parties, by itself, is not enough to rebut this presumption. See In re Infant R., 922 N.E.2d 59, 62 (Ind.Ct.App.2010), trans. denied. The types of evidence used to rebut the marriage presumption for paternity include that the husband was impotent or sterile, the husband was absent during the entire time that the child must have been conceived, and DNA testing. Myers, 13 N.E.3d at 482-83.
[15] Here, the parties stipulated that Husband is not the biological father of G.B.S., as Wife became pregnant by another man after Husband was sent to prison. In addition to the parties’ stipulation, Husband sent letters to Wife while in prison demonstrating that he was incarcerated when she became pregnant. This stipulation and evidence establish that Husband is not G.B.S.’s biological father. But this is not the end of the story.
[16] Before G.B.S. was born, Husband told Wife that he would raise G.B.S. as his own child; Husband then signed G.B.S.’s birth certificate and raised G.B.S. as his own child for twelve years—G.B.S.’s whole life. Of Husband and Wife’s three children, Husband was closest with G.B.S. Husband also told Wife not to contact G.B.S.’s biological father and not to institute paternity proceedings. To date, no paternity proceedings have been initiated. Under these facts, Husband is estopped from rebutting the presumption that he is G.B.S.’s biological father.
[17] Equitable estoppel is a judicial remedy by which a party may be precluded by his own acts or omissions from asserting a right' to which he otherwise would have been entitled or from pleading or proving an otherwise important fact. 28 Am. Jur. 2d Estoppel & Waiver § 27 (2011). The doctrine of equitable estoppel presumes that some legal requirement has not been met. See Schoettmer v. Wright, 992 N.E.2d 702, 709-10 *1081 (Ind.2013) (finding a . genuine issue of material fact as to whether the defendant was estopped from asserting the plaintiffs noncompliance with the Indiana Tort Claims Act’s 180-day notice requirement as a defense based on the defendant’s insurer’s representations to the plaintiff that it could not settle his claim until his treatments were complete); see also Nolan v. Clarksville Police Dep’t, 60 N.E.3d 1128, 1132-33 (Ind.Ct.App.2016) (finding a genuine issue of material fact as to whether the defendant was estopped from asserting the plaintiffs non-compliance with the Indiana Tort Claims Act’s 180-day notice requirement as a defense based on the defendant’s representations to the plaintiff that formal notice would not be necessary), trams, pending; 22A Stephen E.-Arthur & Jerome L. Withered, Indiana Practice, Civil Trial Practice, § 39.9 (2d ed. 2007) (“The doctrine of equitable estoppel is a judicially-created rule which will relieve a plaintiff of the requirements of a statute of limitations in cases whére constructive fraud is present.”).[1]
[18] The purpose of equitable estoppel is to preclude a person from asserting a right when he has led another to form the reasonable belief that the right would not be asserted, and loss or prejudice to the other would result if the right were asserted. 28 Am. Jur. 2d at § 28. The doctrine of estoppel springs from equitable principles, and it is designed to aid in the administration of justice where, without its aid, injustice might result. Levin v. Levin, 645 N.E.2d 601, 604 (Ind.1994). This doctrine is not limited to circumstances involving an actual or false representation or concealment of an existing material fact. Id. Rather, equitable estoppel is a remedy available if one party through his course of conduct knowingly misleads or induces another party to believe and act upon his conduct in good faith without knowledge of the facts. Id.; see also 28 Am. Jur. 2d at § 27 (“Equitable estoppel serves to forbid one to speak against his ... own act[s], representations, or commitments communicated to another who reasonably relies upon them to ... her injury.”).
[19] Here, Husband induced Wife to believe that he would raise and support G.B.S. as his own child (and Husband did so for twelve years). Wife reasonably believed that Husband would not challenge his paternity of G.B.S. and then relied upon Husband’s promise in not filing a paternity action against G.B.S.’s biological father. Indeed, Wife’s opportunity to establish paternity in G.B.S.’s biological father has long passed. See Ind.Code § 31-14-5-3(b) (providing that “[t]he mother” must file a paternity action “not later than two (2) years after the child is bom”; although there are exceptions, none of them likely apply here).[2] To avoid injustice, Husband is equitably estopped from rebutting - the presumption that he is G.B.S.’s biological father.
*1082 [20] Although our Supreme Court has not applied the doctrine of equitable estop-pel to a case with the same facts that are before us, it has applied the doctrine to prevent a husband from denying his obligations to his non-biological child. In Lev-in, husband, who was sterile, and wife decided to use artificial insemination in order to have a child. The procedure was successful, and wife became pregnant and gave birth. Husband and wife were listed as parents on the birth certificate. For ten years, husband supported the child and held him out as his own. The couple then divorced, and the divorce decree included the child as a child of the marriage and required husband to pay child support. Five years later, husband filed a motion for' relief from judgment under Indiana Trial Rule 60(B), requesting the trial court to vacate its child-support order because the child was not his biological child.
[21] On appeal, our Supreme Court noted that husband induced wife to go forward with the artificial insemination and consented both orally and in writing to the procedure. As such, husband promised to become the father of the resulting child and to assume his support. Wife relied in good faith upon husband’s actions and “consequently bore a child for which she believed both she and [husband] would be responsible.” Levin, 645 N.E.2d at 605. Moreover, the Court noted that husband held the child out as his own for fifteen years. And he' made no objection to declaring the child a child of the marriage in the dissolution decree. Accordingly, the Court held that husband was equitably estopped from denying his child-support obligation. Id. at 604. “To hold otherwise would be unjust.” Id. at 605.[3]
[1]
[22] Russell, decided before Levin, also provides support for applying equitable es-toppel here. In Russell, our Supreme Court approvingly cited an equitable-es-toppel case from Montana:
[I]t is well within the discretion of the trial court to withhold approval until paternity has been established in another man. See In re Marriage of K.E.V., [267 Mont. 323], 883 P.2d 1246 (1994) (court applied equitable estoppel to prevent'mother from denying paternity of husband where mother was not seeking to establish paternity in another man; court reiterated that the holding would not bar biological father or child from establishing paternity in- father).
Russell, 682 N.E.2d at 518-19 (emphasis added). We acknowledge that Russell cited R.D.S. favorably and R.D.S. determined that the doctrine of equitable estoppel cannot be used to enter a child-support order against a non-biological- and non-adoptive husband.[4] However, Russell did not address the equitable-estoppel aspect of R.D.S:;' rather, as explained above, Russell recognized that R.D.S. “as a matter of grammar” correctly interpreted “child” as used in Indiana- Code section 31-9-2-13. Id. at 516:[5]'
*1083 [2B] Moreover, public policy supports applying equitable estoppel here, because if not, G.B.S. essentially would be left without a father.[6] Becognizing this concern, Russell acknowledges that a trial court can withhold approval of a stipulation from a divorcing husband and wife that a child is not a child of the marriage until paternity is established in another man in a paternity action collateral to the dissolution action. 682 N.E,2d at 519 (“[S]uch actions may be the only way in which to establish the paternity of a man other than [the] divorcing husband so as to satisfy the dissolution court that the child is not a child of the marriage and permit the divorce to proceed.”).[7]
[24] Applying the principles of equitable estoppel requires the good judgment of the factfinder looking at the circumstances of each case. Under the circumstances of this case where Husband told Wife when she was pregnant that he would raise G.B.S. as his own (and he did so for twelve years), Husband told Wife not to tell the biological father, not to seek support from him, and not to file a paternity action, and Wife relied on Husband’s representations in not establishing paternity in the biological father, Husband is equitably estopped from rebutting the presumption that he is G.B.S.’s biological father.[8] We therefore affirm the trial court.[9]
[25] Affirmed,
*1084 BAKER, J., concurs.
NAJAM, J., dissents with separate opinion.

. Contrary to the dissent’s claim that there can be no equitable remedy in this case because the legislature has addressed this area of the law, the legislature cannot reject equitable estoppel because it is a judicially created rute that seeks to prevent injustice to a party from the requirements of the law.

. Although Wife could file a paternity action as G.B.S.'s next friend, see Ind.Code § 31—14— 5-2(a), Wife’s personal right has been extinguished by the passage of time resulting, from Husband's representations. In any event, even if Wife filed a paternity action as G.B.S.’s next friend, the likelihood of success is diminished because Husband insisted that G.B.S. be raised as his own. At this point, more than thirteen years have passed since G.B.S, was born. Although Wife testified-that she knows the name of the biological father, she has not had any contact with him in "a long time” and does not know where he lives.

. We disagree with the dissent that a deciding factor for the Levin Court was that the husband did not challenge his status as father until after the divorce decree was entered. If that were the determining factor, the Court could have decided the case by applying res judicata or waiver. It did not.

. To die extent that R.D.S. and Cochran v. Cochran, 717 N.E.2d 892 (Ind.Ct.App.1999), trans. denied, hold that the doctrine of equitable estoppel can never be applied to cases like the one before us, we disagree with those decisions.

.We disagree with the dissent that Snow v. England, 862 N.E.2d 664 (Ind.2007), and State ex rel. Hight v. Marion Superior Court, 547 N.E.2d 267 (Ind.1989), rejected equitable estoppel in this situation. Snow does not address equitable estoppel; instead, it reiterates the well-established principle that in loco parentis alone does not establish a support obligation after a relationship ends.
*1083 Equitable estoppel also was not at issue in Might. There, husband was not the biological father of the child but married wife with full knowledge that she was pregnant, allowed his name to be placed on the child’s birth certifí-cate, and held the child out as his own. Wife filed for divorce after two years of marriage, and the dissolution court ordered husband to pay child support and awarded him visitation with the child. Five years after the divorce,husband filed -petitions to modify visitation and for an order to appear and show cause based on wife’s wrongful denial of visitation with the child. Wife filed a motion to dismiss claiming that the trial court lacked subject-matter jurisdiction to address husband’s petitions because the child was not a child of the marriage.' Our Supreme Court held that wife should have argued that the child was not a child of the marriage in the dissolution case— and had she done so the trial court’s order "would have been subject to attack," Hight, 547 N.E.2d at 269—but because she did not do so, she waived the issue. The Court did not directly address equitable estoppel.

.To be sure, public policy also favors requiring a biological father to-pay support for his child. We do not disagree with it. While the application of this policy is sound in most cases, this is not the typical case. Husband voluntarily assumed the responsibility to parent his child, Wife did not file a paternity action for twelve years in reliance on this promise, and the location of the biological father is unknown. When faced with two competing policies, under the facts of this case the policy of not making a child fatherless prevails.
This is not the first time that the policy favoring requiring support from the biological father has given way to other considerations. For example, in In re Paternity of R.M., 939 N.E.2d 1114 (Ind.Ct.App.2010), we recognized that the doctrine of laches could apply to prevent the biological father from establishing paternity when he knew that he could have been the biological father yet he waited a long period of time to claim his paternity. In other words, the policy of requiring the biological father to pay support did not override the right of the child to recognize the man who raised him as his father.

. We are confident here thát the trial court would not have accepted the parties' stipulation had it known that such acceptance meant that G.B.S. would be fatherless. Therefore, even if equitable estoppel did not apply, we would remand this case to the trial court for it to withhold acceptance of the parties’ stipulation until paternity was established in the biological father.

. To the extent that Husband is allowed parenting time with the other two children once the no-contact order is terminated, he is entitled to parenting time with G.B.S.

. We also affirm the trial court’s order that Wife is not required to reimburse Husband for the amounts he paid with respect to a *1084 Chrysler Town and Country and a.Chevrolet Impala. Although the provisional orders provided that Wife was responsible for these -expenses, Wife testified that Husband voluntarily agreed to pay them. Because the trial court expressly relied on Wife’s testimony when it found that Wife is not required to reimburse Husband for these expenses, see Appellant's App, p. 19, its judgment on this issue is not clearly erroneous.