In the

# United States Court of Appeals
## For the Seventh Circuit

———————

No. 17-1141

ASHLEE and RUBY HENDERSON, *et al.*,

*Plaintiffs-Appellees*,

*v.*

KRISTINA BOX, Indiana State Health Commissioner,

*Defendant-Appellant*.

———————

Appeal from the United States District Court for the
Southern District of Indiana, Indianapolis Division.
No. 1:15-cv-00220-TWP-MJD — **Tanya Walton Pratt**, *Judge*.

———————

ARGUED MAY 22, 2017 — DECIDED JANUARY 17, 2020

———————

Before FLAUM, EASTERBROOK, and SYKES, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. The district court issued an injunction requiring Indiana to treat children born into female-female marriages as having two female parents, who under the injunction must be listed on the birth certificate. 209 F. Supp. 3d 1059, 1079–80 (S.D. Ind. 2016). Because Indiana lists only two parents on a birth certificate, this effectively prevents the state from treating as a parent the man who provided the sperm, while it requires the identification as

parent of one spouse who provided neither sperm nor egg. The judge concluded that this approach is required by the Due Process and Equal Protection Clauses of the Fourteenth Amendment, which as understood in *Obergefell v. Hodges*, 135 S. Ct. 2584 (2015), oblige governmental bodies to treat same-sex couples identically to opposite-sex couples. Because Indiana lists a husband as a biological parent (when a child is born during a marriage) even if he did not provide sperm, the district judge concluded, it must treat a wife as a parent even if she did not provide an egg.

The district court's understanding of *Obergefell* has been confirmed by *Pavan v. Smith*, 137 S. Ct. 2075 (2017), which holds that same-sex and opposite-sex couples must have the same rights with respect to the identification of children's parentage on birth certificates. *Pavan* held unconstitutional a provision of Arkansas's law that required a birth certificate to list as parents the names of the child's mother and her husband.

Plaintiffs in this suit contend that *Pavan* is equally applicable to them. That Indiana uses a presumption rather than a bright-line rule does not change the fact that both states treat same-sex and opposite-sex marriages differently when deciding how to identify who is a parent. And even in Arkansas mutual agreement among mother, husband, and "putative father" could lead to a different list of parents on the birth certificate. If that did not save Arkansas's law, the possibility of rebutting the presumption does not save Indiana's.

The state argues that *Obergefell* and *Pavan* do not control. In its view, birth certificates in Indiana follow biology rather than marital status. The state insists that a wife in an opposite-sex marriage who conceives a child through artificial in-

semination must identify, as the father, not her husband but the sperm donor. The plaintiffs do not contend that a regimen using biology rather than marital status to identify parentage violates the federal Constitution, but they submit that Indiana's law is status-based. Thus this appeal depends on the resolution of a dispute about the meaning of Indiana law. Once we decide who is right about the state's system, the outcome follows from *Pavan*.

The district court found forbidden discrimination by putting together three of Indiana's statutes: Ind. Code §§ 31-9-2-15, 31-9-2-16, and 31-14-7-1. The first of these says:

> "Child born in wedlock" … means a child born to:
>
> > (1) a woman; and
> >
> > (2) a man who is presumed to be the child's father under IC 31-14-7-1(1) or IC 31-14-7-1(2) unless the presumption is rebutted.

The second provides:

> "Child born out of wedlock" … means a child who is born to:
>
> > (1) a woman; and
> >
> > (2) a man who is not presumed to be the child's father under IC 31-14-7-1(1) or IC 31-14-7-1(2).

And the third reads:

> A man is presumed to be a child's biological father if:
>
> (1) the:
>
> > (A) man and the child's biological mother are or have been married to each other; and
> >
> > (B) child is born during the marriage or not later than three hundred (300) days after the marriage is terminated by death, annulment, or dissolution;

(2) the:

> (A) man and the child's biological mother attempted to marry each other by a marriage solemnized in apparent compliance with the law, even though the marriage:
>
> > (i) is void under IC 31-11-8-2, IC 31-11-8-3, IC 31-11-8-4, or IC 31-11-8-6; or
> >
> > (ii) is voidable under IC 31-11-9; and
>
> (B) child is born during the attempted marriage or not later than three hundred (300) days after the attempted marriage is terminated by death, annulment, or dissolution; or

(3) the man undergoes a genetic test that indicates with at least a ninety-nine percent (99%) probability that the man is the child's biological father.

The district court treated the presumption in §31-14-7-1(1)(A) as the principal problem: a husband is presumed to be a child's biological father, so that both spouses are listed as parents on the birth certificate and the child is deemed to be born in wedlock. There's no similar presumption with respect to an all-female married couple—or for that matter an all-male married couple. The district court's injunction, which requires both women in a female-female marriage to be listed as parents (and treated as having parental rights and duties), solves the problem.

Indiana tells us that looking only at the statutory text is myopic. It wants us to place substantial weight on something the statutes do *not* say: How the presumption of male parentage in a male-female marriage is overcome. According to the state, women who give birth are asked to provide the name of the child's "father"—not of the "husband" but of the "father." And one form (the "birth worksheet") given to

new mothers indeed calls for this information, though without defining the terms. The state wants us to treat this form, rather than §31-14-7-1(1), as the governing rule.

As the state sees things, "father" means "biological father," so if a child is a result of in vitro fertilization using donated sperm, or of sexual relations outside marriage, then the presumption has been overcome and there is no remaining difference between female-male marriages and female-female marriages. In either situation the birth mother must name as the child's father the man who provided the sperm, and every birth certificate will have one male parent and one female parent. To achieve any other result, the state insists, a married couple (all-female, all-male, or opposite-sex) must use the adoption system. Only following an adoption would it be proper to list "Mother #1" and "Mother #2" on a child's birth certificate, as the district judge required. Indiana issues an amended birth certificate following adoption, while keeping the original as a record of biological parentage. The state then achieves two objectives: identifying biological parentage in the original birth certificate, and identifying legal parentage (and duties) in the second. Trying to do both is not discriminatory, Indiana tells us.

The district judge thought the state's account of mothers' behavior to be implausible. Some mothers filling in the form may think that "husband" and "father" mean the same thing. Others may name their husbands for social reasons, no matter what the form tells them to do. Indiana contends that it is not responsible for private decisions, and that may well be so—but it *is* responsible for the text of Ind. Code §31-14-7-1(1), which establishes a presumption that applies to opposite-sex marriages but not same-sex marriages. Oppo-

site-sex couples can have their names on children's birth certificates without going through adoption; same-sex couples cannot. Nothing about the birth worksheet changes that rule.

Indiana insists that the presumption of parenthood in an opposite-sex marriage does not have legal consequences. Even after a husband's name is on the birth certificate, the state maintains, that does not affect parental rights and duties. A husband does not have any legal rights or duties unless he is the biological father. See *Cochran v. Cochran*, 717 N.E.2d 892, 894 (Ind. App. 1999). Yet even a bursting-bubble presumption—one that vanishes as soon as it is contested— has *some* consequences. Unless the presumption is contested, the husband is deemed the father too, with parental rights and parental duties, in a way that both women in a female-female marriage are not.

One problem with this suit has been the paucity of state decisions interpreting the three statutes at issue. Indiana Code §§ 31-9-2-15 and 31-9-2-16 have never been the subject of litigation, while Ind. Code §31-14-7-1 has rarely been litigated. We have been tempted to certify to the Supreme Court of Indiana the question whether the presumption in Ind. Code §31-14-7-1 is indeed a bursting bubble and whether the instructions on the birth worksheet should be treated as if they had been enacted. But we have decided not to certify, because a few decisions hold that the statutory presumption has real force, and none holds otherwise. For example, *Lamey v. Lamey*, 689 N.E.2d 1265, 1268 (Ind. App. 1997), holds that the presumption cannot be overcome after a husband dies—something that may happen at any time. And *Myers v. Myers*, 13 N.E.3d 478, 482–83 (Ind. App. 2014), holds that only the clearest of evidence can overcome the

presumption if the husband has signed the birth certificate. Another decision says that this means clear and convincing evidence, a long way from a bursting bubble. *Richard v. Richard*, 812 N.E.2d 222, 228 (Ind. App. 2004).

There's a deeper problem and a stronger reason not to certify: all of the contested statutes were enacted long before *Obergefell* and *Pavan*. They are products of a time when only opposite-sex marriages were recognized in Indiana. There's nothing a court can do to remove from the state's statute books provisions assuming that all marriages are opposite-sex. Judges could reduce the weight of a presumption that a husband is also a father, but no act of intellectually honest interpretation could make that presumption vanish. It would not be seemly for us to ask the Supreme Court of Indiana to save the state statutes by rewriting them. They are what they are. The legislature can rewrite them; the judiciary cannot.

In revising the statutes, a legislature could take account of the fact—as the current statutes do not—that both women in a same-sex marriage may indeed be biological mothers. Indiana asserts an interest in recording biological facts, an interest we cannot gainsay. But Indiana's current statutory system fails to acknowledge the possibility that the wife of a birth mother also is a biological mother. One set of plaintiffs in this suit shows this. Lisa Philips-Stackman is the birth mother of L.J.P.-S., but Jackie Philips-Stackman, Lisa's wife, was the egg donor. Thus Jackie is both L.J.P.-S.'s biological mother and the spouse of L.J.P.-S.'s birth mother. There is also a third biological parent (the sperm donor), but Indiana limits to two the number of parents it will record.

We agree with the district court that, after *Obergefell* and *Pavan*, a state cannot presume that a husband is the father of

a child born in wedlock, while denying an equivalent presumption to parents in same-sex marriages. Because Ind. Code §31-14-7-1(1) does that, its operation was properly enjoined.

Other parts of the district court's remedy, however, are not appropriate. For example, the judge declared that the three statutes are invalid in their entireties and forbade their operation across the board. Yet some parts of these statutes have a proper application. For example, Ind. Code §31-14-7-1(3) declares that a man is deemed to be a biological father if a genetic test shows a 99% or higher probability of parenthood. And Ind. Code §31-14-7-1(2), operating in conjunction with Ind. Code §31-9-2-15(2), provides that a child is born in wedlock if the parents attempted to marry each other but a technical defect prevented the marriage from being valid. Neither of these provisions even arguably violates the Constitution, as understood in *Obergefell* and *Pavan*. A remedy must not be broader than the legal justification for its entry, so the order in this suit must be revised.

Some parts of the injunction, like some parts of the district court's opinion, appear to turn a *presumption* of parentage into a *rule* of parentage, so that in a same-sex marriage the birth certificate must list "Mother #1" and "Mother #2" even if, say, the birth mother conceives through sexual relations with a man and freely acknowledges the child's biological parentage. As we have stated several times, the Fourteenth Amendment does not forbid a state from establishing a birth-certificate regimen that uses biology rather than marital status to identify parentage. A state is entitled to separate the questions "whose genes does a given child carry?" from "what parental rights and duties do spouses have?" The

problem is that Indiana appears to merge these questions while specifying that biological heritage wins in the event of conflict—that's the function of §31-14-7-1(3)—yet providing husbands with a presumption, withheld from wives, that a given legal status supports an inference of parenthood. There's no constitutional reason why a presumption that can be defeated for men can't be defeated for women too. This means that although the district court was on solid ground to enjoin the state "from enforcing Indiana Code §§ 31-9-2-15, 31-9-2-16, and 31-14-7-1 in a manner that prevents the presumption of parenthood to be granted to female, same-sex spouses of birth mothers" (209 F. Supp. 3d at 1079), other language needs revision.

Finally, some language in the opinion and injunction might be understood to suggest that female-female married couples must be treated differently from male-male couples, for whom adoption is the only way to produce "Father #1" and "Father #2" on a birth certificate. Although the plaintiffs in this suit are adult women (and children of both sexes), and it would therefore be inappropriate for the court to decide the proper treatment of children born during male-male marriages, it would be helpful for the district court to provide expressly that this question is left open for resolution by the legislature or in some future suit. It also is important to be clear that this litigation does not decide what parental rights and duties (if any) biological fathers such as sperm donors have with respect to the children of female-female marriages. No biological father is a litigant.

Having expressed these concerns, we must be clear what need *not* change. The district court's order requiring Indiana to recognize the children of these plaintiffs as legitimate

children, born in wedlock, and to identify both wives in each union as parents, is affirmed. The injunction and declaratory judgment are affirmed to the extent they provide that the presumption in Ind. Code §31-14-7-1(1) violates the Constitution. The remainder of the judgment is vacated, and the case is remanded for proceedings consistent with this opinion.